# UNITED STATES DISTRICT COURT
# OF THE EASTERN DISTRICT OF NORTH CAROLINA
# WESTERN DIVISION

| | |
|---|---|
| **MADISON CAWTHORN**, an individual,<br><br>*Plaintiff*,<br><br>v.<br><br>**MR. DAMON CIRCOSTA**, in his official capacity as Chair of the North Carolina State Board of Elections, **MS. STELLA ANDERSON**, in her official capacity as a member of the North Carolina State Board of Elections, **MR. JEFF CARMON**, in his official capacity as a member of the North Carolina State Board of Elections, **MR. STACY EGGERS IV**, in his official capacity as a member of the North Carolina State Board of Elections, **MR. TOMMY TUCKER**, in his official capacity as a member of the North Carolina State Board of Elections, **MS. KAREN BRINSON BELL**, in her official capacity as the Executive Director of the North Carolina State Board of Elections.<br><br>*Defendants*. | **Civ. No.** |

## Plaintiff's Verified Complaint for Declaratory and Injunctive Relief

Plaintiff Madison Cawthorn complains against Defendants as follows:

## Introduction

1. This is a civil action for declaratory and injunctive relief arising under the First and Fourteenth Amendments of the Constitution of the United States, under 42 Cong. Ch. 194, May 22, 1872, 17 Stat. 142, as well as 42 U.S.C. §§ 1983 and 1988.

2. This civil action concerns the constitutionality of North Carolina law, which Rep. Cawthorn is subject to and which has been applied against him. *See generally* N.C.G.S. § 163-

**Ver. Compl. for**
**Decl. and Inj. Relief**                  1

127.1, *et seq*. This state law allows any qualified voter registered in the same district as the office as a candidate for "any elective office in the State" to file a challenge that the Candidate does not meet the constitutional or statutory qualifications for the office. N.C.G.S. §§ 163-127.1, 127.2(b).

## Jurisdiction and Venue

3. This action arises under 42 U.S.C §§ 1983 and 1988 to redress the deprivation under color of state law of rights secured by the Constitution of the United States and under federal law.

4. This Court has original subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3).

5. This Court has the authority to provide declaratory relief under 28 U.S.C. §§ 2201 and 2202 and under Rule 57 of the Federal Rules of Civil Procedure.

6. This Court has the authority to provide preliminary and permanent injunctive relief under Rule 65 of the Federal Rules of Civil Procedure.

7. This Court has personal jurisdiction over Defendants because they are domiciled in the State of North Carolina or have otherwise made and established contacts within the State to permit the exercise of personal jurisdiction over them.

8. Venue is proper in this district under 28 U.S.C. § 1391(b) because the facts giving rise to this action occurred in this District.

## Parties

9. Plaintiff Madison Cawthorn ("**Rep**. **Cawthorn**") resides in Hendersonville, North Carolina, and currently serves as a Member of the U.S. House of Representative, for North

**Ver. Compl. for**
**Decl. and Inj. Relief**                    2

Carolina's 11th congressional district. Rep. Cawthorn filed his candidacy, for the upcoming midterm elecions, for North Carolina's 13th congressional district on December 7, 2021.

10. Defendant Damon Circosta is sued in his official capacity as the Chair of the North Carolina State Board of Elections ("**NCSBE**"). In his official capacity, it is his responsibility to oversee the administration of the NCSBE, including overseeing and potentially adjudicating any Challenges to Candidates filed under the Challenge Statute. Mr. Circosta is a person within the meaning of 42 U.S.C. § 1983 and was acting under color of state law at all times relevant to this Complaint.

11. Defendant Stella Anderson is sued in her official capacity as a member of the NCSBE. In her official capacity, it is her responsibility to oversee the administration of the NCSBE, including overseeing and potentially adjudicating any Challenges to Candidates filed under the Challenge Statute. Ms. Anderson is a person within the meaning of 42 U.S.C. § 1983 and was acting under color of state law at all times relevant to this Complaint.

12. Defendant Mr. Jeff Carmon is sued in his official capacity as a member of the NCSBE. In his official capacity, it is his responsibility to oversee the administration of the NCSBE, including overseeing and potentially adjudicating any Challenges to Candidates filed under the Challenge Statute. Mr. Carmon is a person within the meaning of 42 U.S.C. § 1983 and was acting under color of state law at all times relevant to this Complaint.

13. Defendant Mr. Stacy Eggers, IV is sued in his official capacity as a member of the NCSBE. In his official capacity, it is his responsibility to oversee the administration of the NCSBE, including overseeing and potentially adjudicating any Challenges to Candidates filed

under the Challenge Statute. Mr. Eggers is a person within the meaning of 42 U.S.C. § 1983 and was acting under color of state law at all times relevant to this Complaint.

14. Defendant Mr. Tommy Tucker is sued in his official capacity as a member of the NCSBE. In his official capacity, it is his responsibility to oversee the administration of the NCSBE, including overseeing and potentially adjudicating any Challenges to Candidates filed under the Challenge Statute. Mr. Tucker is a person within the meaning of 42 U.S.C. § 1983 and was acting under color of state law at all times relevant to this Complaint.

15. Defendant Karen Brinson Bell. is sued in her official capacity as the Executive Director of the NCSBE. In her official capacity, it is her responsibility to oversee the administration of the NCSBE, including overseeing and potentially adjudicating any Challenges to Candidates filed under the Challenge Statute. Ms. Bell is a person within the meaning of 42 U.S.C. § 1983 and was acting under color of state law at all times relevant to this Complaint.[1]

## Facts

**Challenge Statute**

16. Under North Carolina law, any qualified voter registered in the same district ("**Challenger**") as a candidate for "any elective office in the State" ("**Candidate**") may file a challenge that the Candidate does not meet the constitutional or statutory qualifications for the office, including residency. ("**Challenge**") N.C.G.S. §§ 163-127.1, 127.2(b); *see generally*

---

[1] Defendants Mr. Damon Circosta, Ms. Stella Anderson, Mr. Jeff Carmon, Mr. Stacy Eggers IV, Mr. Tommy Tucker, all serve as members of the NCSBE. Defendant Karen Brinson Bell serves as the NCSBE's Executive Director. All Defendants are named in this suit in their official capacities. For the purposes of this Complaint, "NCSBE" refers collectively to Defendants, named in their official capacities.

Ver. Compl. for
Decl. and Inj. Relief 4

N.C.G.S. § 163-127.1, *et seq*. ("**Challenge Statute**").

17. A Challenge must be filed with the NCSBE receiving the notice of the candidacy no later than 10 business days after the close of the filing period for notice of candidacy. N.C.G.S. § 163-127.2(a).

18. The Challenge must be made in a verified affidavit by a challenger, *based on reasonable suspicion* or belief of the facts stated. *Id.* at (b) (emphasis added).

**Challenge Process**

**A.     Panel appointment**

19. If the Challenge is filed against a Candidate for an office that "contains territory in more than one county but is less than the entire State," the NCSBE will appoint a panel ("**Panel**") to conduct hearings on the Challenge. N.C.G.S. § 163-127.3(2).

20. Under North Carolina law, the composition of the Panel for such a Challenge must include: (1) "at least one member of the county board of elections in each county in the district of the office"; (2) "an odd number of members, no fewer than three and no more than five"; (3) appointed "members from each county in proportion to the relative total number of registered voters of the counties in the district for the office"; and (4) appointed, "to the extent possible, . . . members affiliated with different political parties in proportion to the representation of those parties on the county boards of elections in the district for the office." *Id*.

**B.     Conduct of panel hearing**

21. The Panel must: (1) "[w]ithin five business days after the challenge is filed, designate and announce the time of the hearing and the facility where the hearing will be held"; (2) "[a]llow for

depositions prior to the hearing, if requested by the challenger or candidate before the time of the hearing is designated and announced"; (3) "[i]ssue subpoenas for witnesses or documents, or both, upon request of the parties or upon its own motion"; and (4) "[r]ender a written decision within 20 business days after the challenge is filed and serve that written decision on the parties." N.C.G.S. § 163-127.4(a).

22. The Panel must give notice of the hearing to the Challenger, the Candidate, other candidates filing for the same office, the county chair for each political party, and for those persons requesting notification. *Id.* at (b).

23. The notice must include the copy of the Challenge or a summary of its allegations. *Id.*

24. The Panel may allow evidence to be presented at the hearing, in the form of affidavits, or the Panel may examine witnesses, who must testify under oath. *Id.* at (c)(1).

25. The Panel has the authority to issue subpoenas for witnesses or documents, or both. *Id.*

26. The Panel may receive evidence at the hearing from "any person with information concerning the subject of the [C]hallenge." *Id.* at (2).

27. The hearing must be recorded by a reporter, and the full record must be preserved by the Panel "until directed otherwise" by the NCSBE. *Id.* at (3).

28. After the hearing, the Panel "shall make a written decision on each [C]hallenge by separately stating findings of facts, conclusions of law, and an order." *Id.* at (d).

**C.    Burden of Proof**

29. When a Candidate is subject to a Challenge, "[t]he burden of proof *shall be upon the candidate, who must show by a preponderance of the evidence* of the record as a whole that he or

she is qualified to be a candidate for the office." N.C.G.S. § 163-127.5(a) (emphasis added).

30. If the Challenge is based upon the Candidate's residency, the Candidate must show: (1) an abandonment of the first domicile, coupled with an intent not to return to the first domicile; (2) the acquisition of a new domicile by actual residence at another place; and (3) the intent of making the newer domicile a permanent domicile. *Id*. at (b).

31. The statute does not designate what type of proof the Candidate must provide to meet his burden of proof for any Challenge not based upon residency. *See id.*

32. The NCSBE is vested with certain general powers, which include, *inter alia*: general supervision of the elections in the State; appointing and advising members of the county boards of elections; investigation and administration of election laws; determination of the form and content of ballots; and certifying to the appropriate county boards of elections the names of candidates for district offices. N.C.G.S. § 163-22.

33. Therefore, if the NCSBE, or a Panel appointed by the NCSBE, determines a challenged Candidate does not meet the "qualifications" for office, the NCSBE could remove that Candidate's name from the ballot, via its certification authority, thereby preventing that Candidate from running for office.

**D.   Appeals**

34. An appeal from a Panel decision may be appealed to the NCSBE as a whole by either the Challenger or a Candidate "adversely affected by the panel's decision." N.C.G.S. § 163-127.6(a).

35. The appeal must be taken within two business days after the Panel serves its written decision on the parties. *Id.*

**Ver. Compl. for
Decl. and Inj. Relief**                                7

36. The NCSBE must base its appellate decision "on the whole record of the hearing conducted by the panel and render its opinion on an expedited basis." *Id.*

37. From the final order or decision by the NCSBE, appeal as of right lies directly to the North Carolina Court of Appeals. *Id.*

38. Generally, the appellate courts review administrative agency decisions with a "highly deferential" standard. *Friends of Cap. Crescent Trail v. United States Army Corps of Engineers*, 855 F. App'x 121, 125 (4th Cir. 2021) (finding agency action sustained if it "provides an explanation of its decision that includes a rational connection between the facts found and the choice made").

39. Questions of law are reviewed *de novo*. *Herrera-Martinez v. Garland*, 22 F.4th 173, 180 (4th Cir. 2022).

**Cawthorn Challenge**

40. Rep. Cawthorn currently serves as a Member of the U.S. House of Representative, for North Carolina's 11th congressional district.

41. Rep. Cawthorn filed his candidacy, for the upcoming midterm elections, for North Carolina's 13th congressional district on December 7, 2021.

42. On January 10, 2022, several Challengers filed a Challenge against Rep. Cawthorn.

43. The Cawthorn Challenge stated that Rep. Cawthorn "does not meet the federal constitutional requirements for a Member of the U.S. House of Representatives and is therefore ineligible to be a candidate for such office."

44. The Cawthorn Challenge was based upon claims that Rep. Cawthorn engaged in

"insurrection or rebellion" against the United States and was not qualified to be a Member of Congress under Section Three of the Fourteenth Amendment to the U.S. Constitution.

45. Rep. Cawthorn vigorously denies that he engaged in "insurrection or rebellion" against the United States, but this litigation is not based in Rep. Cawthorn's factual defenses. Instead, this matter is before the Court based upon various constitutional and legal challenges to the North Carolina Challenge Statute itself and its application here.

46. On January 11, 2022, the North Carolina Superior Court for Wake County issued a stay on all Challenges filed with the NCSBE until a "final resolution" is reached on the ongoing litigation related to the drawing of North Carolina's congressional districts.

47. The congressional districts as drawn by the North Carolina legislature have been upheld by a trial court, but the Supreme Court of North Carolina will be hearing appellate arguments of that decision as to congressional and other districts on February 2, 2022.

48. Rep. Cawthorn intends to run in the 2022 elections in an appropriate congressional district for North Carolina, after the congressional map question is resolved (by either continuing his candidacy as filed or re-filing in a different district).

## Standing

49. For there to be a case or controversy under Article III, the plaintiff must have a "personal stake" in the case—in other words, standing. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).

50. For a plaintiff to establish standing under Article III, he must (1) have suffered an "injury in fact"; (2) that is fairly traceable to the challenged action of the defendant; and (3) it is likely, as

Ver. Compl. for
Decl. and Inj. Relief                    9

opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

51. Here, Rep. Cawthorn meets all three Article III standing requirements under *Lujan*.

52. As a candidate for Congress, Rep. Cawthorn is subject to the Challenge Statute's provisions, and, in fact, was challenged under the statute. If successful, a Challenge to his candidacy would prevent him from running for Congress, which is quintessential First Amendment activity. *See Washington v. Finlay*, 664 F.2d 913, 927-28 (4th Cir. 1981) (acknowledging the First Amendment's protection of the freedom of association and of the rights to run for office, to have one's name on the ballot, and to present one's views to the electorate).

53. His potential injury is not in any way hypothetical—not only is Rep. Cawthorn subject to the Challenge Statute, a Challenge was recently filed (although currently stayed) against him.

54. The NCSBE has the power to prevent Rep. Cawthorn's name from appearing on the ballot, if a Challenge against his candidacy is ultimately successful under the Challenge Statute, thereby preventing him from running for office. . N.C.G.S. § 163-22.

55. Rep. Cawthorn's potential disqualification from running for office on the basis of a successful Challenge Statute is directly traceable to the NCSBE.

56. Under the Challenge Statute, the NCSBE has the authority to determine, after a hearing, whether the challenged Candidate is disqualified from running for that office. N.C.G.S. § 163-127, *et seq*.

57. The decision of the NCSBE is adjudicatory and is appealable to the North Carolina Court of Appeals.

**Ver. Compl. for Decl. and Inj. Relief** 10

58. If the current congressional districts remain in place, Rep. Cawthorn is a Candidate for the 13th congressional district and will be subject to a Challenge (either by virtue of the court lifting the stay or by virtue of a new Challenge). If the congressional districts are redrawn, Rep. Cawthorn intends to file his candidacy in the appropriate district, Compl. at ¶ 48, and would be subject to the Challenge Statue.

59. In this way, Rep. Cawthorn's constitutional injuries, as detailed herein, are directly traceable to government actors, via enforcement by the NCSBE and subsequent appellate decisions by the North Carolina State Court system.

## *Younger* Abstention

60. Federal courts abstain from jurisdiction whenever federal claims have been or could be presented in ongoing state judicial proceedings that concern important state interests—this principle of abstention is known as the *Younger* abstention doctrine. *See generally Younger v. Harris*, 401 U.S. 37 (1971).

61. The current congressional districts, drawn after the 2020 census, are subject to current litigation before the North Carolina Supreme Court.

62. Because of this pending litigation, the Superior Court Division of Wake County issued a stay against all candidacy Challenges currently filed in the NCSBE.

63. Here, *Younger* does not apply because there is no "ongoing state judicial proceeding," as all candidacy Challenges have been stayed.

64. Most importantly, *Younger* does not apply because the NCSBE has no authority to decide the constitutional issues before this Court. The judicial power of North Carolina is fully vested in

the judicial branch of the state government. N.C. Const. art. IV, § 1. An administrative agency "has no power to promulgate rules and regulations which alter or add to the law it was set up to administer or which have the effect of substantive law." *Hall v. Toreros, II, Inc.*, 176 N.C. App. 309.

65. If the NCSBE determined all, or a portion, of the Challenge Statute was unconstitutional, the statute it is set up to administer would be altered, by definition. The NCSBE does not have that authority under law, and so *Younger* does not apply.

## COUNT I:
**The Challenge Statute's Provision triggering a government investigation based solely upon a Challenger's reasonable suspicion violates Rep. Cawthorn's First Amendment right to run for political office.**
**First Amendment Violation**
**U.S. Const. Amend. 1**
**(42 U.S.C. § 1983)**

66. Running for political office is quintessential First Amendment activity and afforded great protection. *See Clements v. Fashing*, 457 U.S. 957, 985 (1982)*,* (Brennan J., dissenting) (finding "[pursuing political office] is clearly protected by the First Amendment and restrictions on it must be justified by the State's interest in ensuring the continued proper performance of current public duties"); *Washington*, 664 F.2d at 927-28 (acknowledging the First Amendment's protection of the freedom of association and of the rights to run for office, to have one's name on the ballot, and to present one's views to the electorate).

67. When an individual files a Challenge under the Challenge Statute, it automatically triggers a hearing by the NCSBE or by a Panel appointed by the NCSBE. N.C.G.S. §§ 163-127.3; 127.4 (the NCSBE "shall" appoint a panel, the panel "shall" designate, announce, and conduct a

hearing on the Challenge, which includes the power to subpoena and depose witnesses, and "shall" render a decision on the Challenge).

68. The NCSBE is an administrative agency authorized to carry out its statutorily defined powers and is therefore a government actor, required to act within the boundaries of the U.S. Constitution. *See* N.C.G.S. § 163-22.

69. When a Challenge is filed under the Challenge Statute, the Challenger is only required to filed a verified affidavit, *based on reasonable suspicion* or belief of the facts stated disqualify the Candidate from running for office. N.C.G.S. § 163-127.2(b). (emphasis added).

**70.** When someone is exercising his First Amendment rights, reasonable suspicion is not enough to infringe on the fundamental right concerned. *See Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013); *see also Lowe v. Spears*, 258 F. App'x 568, 570 (4th Cir. 2007).

71. The Challenge Statute's provision that allows a Challenge based upon a reasonable suspicion—that can be less reliable than the type of information required to support probable cause—was applied to Rep. Cawthorn, and he is subject to its provisions now.

72. This provision of the Challenge Statute triggering a government investigation based only upon a Challenger's reasonable suspicion violates Rep. Cawthorn's First Amendment right to run for political office.

# COUNT II:
**The provision of the Challenge Statute which shifts the burden of proving a negative to the Candidate, as applied to any Challenge under Section Three of the Fourteenth Amendment, violates the Due Process Clause of the Fourteenth Amendment.**
**Due Process Violation**
**U.S. Const. Amend. XIV**
**(42 U.S.C. § 1983)**

73. A Challenge may be issued by a qualified voter based upon a *reasonable suspicion* that a Candidate does not meet the constitutional or statutory qualifications for the office, including residency. N.C.G.S. §§ 163-127.1, 127.2(b) (emphasis added).

74. When a Candidate is subject to a Challenge, "[t]he burden of proof *shall be upon the candidate, who must show by a preponderance of the evidence* of the record as a whole that he or she is qualified to be a candidate for the office." N.C.G.S. § 163-127.5(a) (emphasis added).

75. In the case of a Challenge based upon residency, the proof the Candidate must provide is relatively straightforward—documents showing a change of address could easily be provided by the Candidate.

76. The same is not true for a Challenge, such as the stayed Challenge here, which was brought under the "disqualification clause," Section Three, of the Fourteenth Amendment. Rep. Cawthorn, under the Challenge Statute, would be required to prove by a preponderance of evidence that he didn't engage in an "insurrection or rebellion."

77. Such burden shifting is unconstitutional under Due Process Clause of the Fourteenth Amendment.

78. When processes implicate free speech, "the operation and effect of the method by which speech is sought to be restrained must be subjected to close analysis and critical judgment in the

**Ver. Compl. for**
**Decl. and Inj. Relief** 14

light of the particular circumstances to which it is applied." *Speiser v. Randall*, 357 U.S. 513, 520 (1958) (internal citations omitted).

79. Here, Rep. Cawthorn is required to produce countervailing evidence to prove a negative (i.e., he did not engage in an insurrection), based upon nothing more than the Challenger's "reasonable suspicion." Such a burden shifting requirement, as applied to Rep. Cawthorn here, violates his constitutional rights to Due Process Clause under the Fourteenth Amendment.

## COUNT III
**The Challenge Statute usurps the U.S. House of Representative's power to make an independent, final judgment on the qualifications of its Members, so it violates U.S. Const. Art. 1, § 5 of the U.S. Constitution.**
**(42 U.S.C. § 1983)**

80. Each House shall be the Judge of the Elections, Returns and Qualifications of its own Members, and a Majority of each shall constitute a Quorum to do Business; but a smaller Number may adjourn from day to day, and may be authorized to compel the Attendance of absent Members, in such Manner, and under such Penalties as each House may provide. U.S. Const. art. I, § 5, cl. 1.

81. This exclusive role forms the basis for the Supreme Court's reasoning in *Roudebush v. Hartke*. 405 U.S. 15 (1972). The Court found that the State of Indiana had broad power to regulate the election of Senators, which included conducting and overseeing recounts because that power didn't "frustrate the Senate's ability to make an independent final judgment." *Id*. at 24-26.

82. Here, the Challenge Statute permits the State of North Carolina to make its own independent evaluation of whether a Candidate is constitutionally qualified to be elected to the

**Ver. Compl. for**
**Decl. and Inj. Relief**                  15

U.S. House of Representatives or Senate. N.C.G.S. §§ 163-127.1, 127.2(b).

83. This function reaches far beyond the State's authority to regulate its elections, conduct counts and recounts of votes, and other administrative functions allowed by our system of federalism.

84. North Carolina cannot invade or frustrate the House of Representative's ability to make its independent, final judgment of the qualifications of a Member.

85. Because the Challenge Statute directly usurps Congress' constitutional responsibilities, it violates Article 1, § 5 of the U.S. Constitution.

## COUNT IV
**The Challenge Section, as applied to Rep. Cawthorn under Section Three of the Fourteenth Amendment, violates federal law.**
**42 Cong. Ch. 194, May 22, 1872, 17 Stat. 142**

86. Section Three of the Fourteenth Amendment reads,

> No person shall be a Senator or Representative in Congress, or elector of President and Vice President, or hold any office, civil or military, under the United States, or under any State, ***who, having previously taken an oath, as a member of Congress***, or as an officer of the United States, or as a member of any State legislature, or as an executive or judicial officer of any State, to support the Constitution of the United States, ***shall have engaged*** in insurrection or rebellion against the same, or given aid or comfort to the enemies thereof. But Congress may by a vote of two-thirds of each House, remove such disability.

U.S. Const. amend. XIV, § 3 (emphasis added).

87. Of course Congress does not have the power to "repeal" a constitutional Amendment, but the plain language of the Amendment itself gave Congress the power to remove this particular political disability.

88. The Amnesty Act of 1872, reads, "all political disabilities imposed by the third section of

**Ver. Compl. for**
**Decl. and Inj. Relief** 16

the fourteenth amendment to the Constitution of the United States are hereby removed from all persons whomsoever, except Senators and Representatives of the thirty-sixth and thirty-seventh Congresses, officers in the judicial, military, and naval service of the United States, heads of departments, and foreign ministers of the United States." United States Statutes at Large, 42 Cong. Ch. 194, May 22, 1872, 17 Stat. 142 ("**1872 Act**").

89. The plain language of the 1872 Act removed the political disability of Section Three from any Representative other than those of the 36th or 37th Congresses.

90. Rep. Cawthorn is a Member of the 117th Session of Congress, so the 1872 Act removed the ability to apply Section Three to Rep. Cawthorn.

91. Since Section Three does not apply to Rep. Cawthorn (or any Member holding office after the 37th Congress), the application of Section Three to Rep. Cawthorn is prohibited by federal law.

## Prayer for Relief

**WHEREFORE**, Plaintiff prays for the relief set forth below:

1. Declare that the Challenge Statute is unconstitutional under the First Amendment because its "reasonable suspicion" standard is insufficient justification to trigger a government investigation.

2. Declare that the burden shifting provision of the Challenge Statute is unconstitutional under the Due Process Clause of the Fourteenth Amendment because it requires Rep. Cawthorn to prove a negative, as applied to any Challenge under Section Three of the Fourteenth Amendment.

**Ver. Compl. for
Decl. and Inj. Relief** 17

3. Declare that the Challenge Statute is also unconstitutional under Article 1, § 5 of the U.S. Constitution because Congress is the exclusive judge of the qualifications of its Members.

4. Declare that the application of Section Three of the Fourteenth Amendment to Rep. Cawthorn is prohibited by federal law.

5. Preliminarily and permanently enjoin Defendants from enforcing the Challenge Statute against Rep. Cawthorn and disqualifying him from being a candidate for Congress in North Carolina.

6. Award all costs and expenses of bringing this action, including attorneys' fees, costs, and expenses; and

7. Grant any other relief this Court deems appropriate.

## Verification

I, Madison Cawthorn, declare as follows:

1. I am a resident of North Carolina.
2. If called upon to testify, I would testify competently as to the matters set forth in the foregoing *Verified Complaint for Declaratory and Injunctive Relief*.
3. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this *Verified Complaint for Declaratory and Injunctive Relief* concerning me and my past and intended activities are true and correct to the best of my knowledge and understanding. 28 U.S.C. § 1746.

Executed on January 31, 2022.

*/s/ MC*

Madison Cawthorn

| | |
|---|---|
| Dated: January 31, 2022 | Respectfully Submitted, |
| /s/ Josh Howard<br>Gammon, Howard & Zeszotarski, PLLC<br>The Water Tower Building<br>115 ½ West Morgan Street<br>Raleigh, NC 27601<br>jhoward@ghz-law.com<br>Phone: (919) 521-5878<br>Fax: (919) 882-1898<br>State Bar No. 26902<br>*Local Civil Rule 83.1(d) Counsel for Plaintiff* | /s/ James Bopp, Jr.<br>James Bopp, Jr., Ind. Bar No. 2838-84<br>Melena S. Siebert, Ind. Bar No. 35061-15<br>THE BOPP LAW FIRM<br>1 South 6th Street<br>Terre Haute, Indiana 47807<br>Telephone: (812) 232-2434<br>Facsimile: (812) 235-3685<br>jboppjr@aol.com<br>msiebert@bopplaw.com<br>*Attorneys for Plaintiff* |

**Ver. Compl. for
Decl. and Inj. Relief** 20