# UNITED STATES DISTRICT COURT
## OF THE EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION

| | |
|---|---|
| **MADISON CAWTHORN**, an individual,<br><br>*Plaintiff*,<br><br>*v.*<br><br>**MR. DAMON CIRCOSTA**, in his official capacity as Chair of the North Carolina State Board of Elections, **MS. STELLA ANDERSON**, in her official capacity as a member of the North Carolina State Board of Elections, **MR. JEFF CARMON**, in his official capacity as a member of the North Carolina State Board of Elections, **MR. STACY EGGERS IV**, in his official capacity as a member of the North Carolina State Board of Elections, **MR. TOMMY TUCKER**, in his official capacity as a member of the North Carolina State Board of Elections, **MS. KAREN BRINSON BELL**, in her official capacity as Executive Director of the North Carolina State Board of Elections.<br><br>*Defendants*. | **Civ. No.   5:22-cv-50-M** |

## Plaintiff's Memorandum in Support of Plaintiff's Motion for Preliminary Injunction

Pl.'s Mem. in Supp. of
Prelim. Inj.

# Table of Contents

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Summary of the Nature of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    Challenge Statute. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    Challenge Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.  Panel appointment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.  Conduct of panel hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    C.  Burden of Proof . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    D.  Appeals. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    Cawthorn Challenge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

I. Cawthorn has standing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    A.  Rep. Cawthorn has an injury in fact. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    B.  Rep. Cawthorn's injury is traceable to the NCSBE's enforcement of the Challenge
        Statute. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    C.  Rep. Cawthorn's injury is redressable by the court enjoining the statute as
        unconstitutional. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

II. The Younger abstention doctrine does not apply because there is no

ongoing state proceeding. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    A.  The North Carolina court stayed all candidacy challenges before the NCSBE. . . . . . . 10

    B.  The current congressional districts are in effect, pending appeal. . . . . . . . . . . . . . . . 11

    C.  The NCSBE has no authority to decide the constitutional issues at hand. . . . . . . . . . . 12

III. Cawthorn is entitled to a preliminary injunction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    A.  Cawthorn is likely to succeed on the merits. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        1.  The statute is unconstitutional because its "reasonable suspicion" standard is
            insufficient justification under the First Amendment to trigger a government
            investigation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        2.  The burden shifting provision of the Challenge Statute is unconstitutional under the
            Due Process Clause of the Fourteenth Amendment because it requires Cawthorn to
            prove a negative. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        3.  The statute is unconstitutional under Article 1, § 5 of the U.S. Constitution because
            Congress is the exclusive judge of the qualifications of its Members. . . . . . . . . . . 19

Pl.'s Mem. in Supp. of
Prelim. Inj.                          ii

Case 5:22-cv-00050-M   Document 2-1   Filed 01/31/22   Page 2 of 36

4.  Application of Section Three of the Fourteenth Amendment to Cawthorn is prohibited by federal law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

B.  Cawthorn will suffer irreparable harm. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

C.  The balance of hardships favors Cawthorn. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

D.  Public interest favors injunction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

# Table of Authorities

**Cases**

*Alabama v. White*, 496 U.S. 325 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*City of Houston v. Hill*, 482 U.S. 451, (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Clements v. Fashing*, 457 U.S. 957 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Cox v. McCrery*, No. Civ.A.06-2191, 2007 WL 97142 (W.D. La. Jan. 5, 2007) . . . . . . . . . . . 20

*Elrod v. Burns*, 427 U.S. 347 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Friends of Cap. Crescent Trail v. United States Army Corps of Engineers*, 855 F. App'x 121 (4th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 18

*Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507 (4th Cir.2002) . . . . . . . . . . . . . . . . . . . . 24, 25

*Hackford v. Utah*, 827 F. App'x 808 (10th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Hall v. Toreros, II, Inc.*, 176 N.C. App. 309 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Hall v. Toreros, II, Inc.*, 363 N.C. 114 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Herrera-Martinez v. Garland*, 22 F.4th 173 (4th Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*L. Students C.R. Rsch. Council, Inc. v. Wadmond*, 401 U.S. 154 (1971) . . . . . . . . . . . . . . . 12, 13

*Lowe v. Spears*, 258 F. App'x 568 (4th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*McFarland v. Am. Sugar Ref. Co.*, 241 U.S. 79 (1916) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 722 F.3d 591 (4th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982) . . . . . . . . . . . 10

*Moore v. Sims*, 442 U.S. 415 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Newsom ex rel. Newsom v. Albemarle Cty. Sch. Bd.*, 354 F.3d 249 (4th Cir. 2003) . . . . . . . . . 26

*North Carolina League, of Conservation Voters, Inc. v. Hall*, No. 21 CVS 015426, 2022 WL 124616 (N.C.Super. Jan. 11, 2022). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11

*PDX N., Inc. v. Asaro-Angelo*, 142 S. Ct. 69 (2021). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*PDX N., Inc. v. Comm'r New Jersey Dep't of Lab. & Workforce Dev.*, 978 F.3d 871 (3d Cir. 2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Ross v. Meese*, 818 F.2d 1132 (4th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Roudebush v. Hartke*, 405 U.S. 15 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*Speiser v. Randall*, 357 U.S. 513 (1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*State ex rel. Chavez v. Evans*, 446 P.2d 445 (N.M. 1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Tobey v. Jones*, 706 F.3d 379 (4th Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*W. & A.R.R. v. Henderson*, 279 U.S. 639 (1929) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Washington v. Finlay*, 664 F.2d 913 (4th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 14

*Waters v. Churchill*, 511 U.S. 661 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Younger v. Harris*, 401 U.S. 37 (1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**Constitutions, Statutes, and Rules**

N.C. Const. art. IV, § 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

N.C. Const. art. IV, § 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

N.C.G.S. § 163-127.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 13, 20

**Pl.'s Mem. in Supp. of**
**Prelim. Inj.**                                    v

N.C.G.S. § 163-127.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 15, 20

N.C.G.S. § 163-127.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 15

N.C.G.S. § 163-127.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 15

N.C.G.S. § 163-127.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 16

N.C.G.S. § 163-127.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

N.C.G.S. § 163-22 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9, 13, 15, 26

U.S. Const. amend. XIV, § 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 21

U.S. Const. art. I, § 5, cl. 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

United States Statutes at Large, 42 Cong. Ch. 194, May 22, 1872, 17 Stat. 142 . . . . . . . . . . . . 22

United States Statutes at Large, 55 Cong. Ch. 390, June 7, 1898, 30 Stat. 432 . . . . . . . . . . . . 22

**Other Authorities**

6 Clarence Cannon, *Cannon's Precedents of the House of Representatives of the United States*
52-63 (1936) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Black's Law Dictionary (11th ed. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Derek T. Muller, *Scrutinizing Federal Electoral Qualifications*, 90 Ind. L.J. 559 (2015) . . 19, 20

Gerard N. Magliocca, Amnesty and Section Three of the Fourteenth Amendment, 36 Const.
Comment. 87 (2021). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Kristen R. Lisk, Note, *The Resolution of Contested Elections in the U.S. House of
Representatives: Why State Courts Should Not Help with the House Work*, 83 N.Y.U. L. Rev.
1213 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## Summary of the Nature of the Case

The fundamental right of an individual to run for political office; to not be subject to an unjustified investigation and a requirement to "prove" his innocence; the proper role of Congress and the States in determining the qualifications of a Member of Congress; and, ultimately, whether state bureaucrats or voters will determine who is elected to Congress are at stake in this litigation.

Plaintiff Rep. Madison Cawthorn ("**Rep. Cawthorn**") currently serves as a Member of the U.S. House of Representatives, for North Carolina's 11th congressional district. Rep. Cawthorn filed his candidacy, for the upcoming midterm elections, for North Carolina's 13th congressional district on December 7, 2021.

On January 10, 2022, several Challengers filed a Challenge with the North Carolina State Board of Election ("**NCSBE**") against Rep. Cawthorn. The Cawthorn Challenge alleges that Rep. Cawthorn "does not meet the federal constitutional requirements for a Member of the U.S. House of Representatives and is therefore ineligible to be a candidate for such office." The Cawthorn Challenge was based upon claims that Rep. Cawthorn engaged in "insurrection or rebellion" against the United States and was ineligible to run for Congress under Section Three of the Fourteenth Amendment to the U.S. Constitution. Rep. Cawthorn vigorously denies that he engaged in insurrection or rebellion against the United States, but this litigation is not based on Rep. Cawthorn's factual defenses. Instead, this matter is before the court based upon various constitutional challenges to the North Carolina Challenge Statute itself.

The Challenge Statute's provision allows a Challenge to Rep. Cawthorn's "qualifications" to

**Pl.'s Mem. in Supp. of
Prelim. Inj.** 1

be a Candidate for Congress to be based upon only a "reasonable suspicion." This provision violates Rep. Cawthorn's First Amendment rights in the same way a peaceful protestor's rights would be violated if arrested based upon only a reasonable suspicion.

Furthermore, based only on this "reasonable suspicion," the Challenge Statute shifts the burden of proof to Rep. Cawthorn to prove a negative (i.e., that he did not engage in insurrection). This provision violates the Due Process Clause of the Fourteenth Amendment.

The Challenge Statute also reaches far beyond the State's authority to regulate its own elections, conduct counts and recounts of votes, and other administrative functions by allowing the NCSBE to judge the qualifications of a Member of Congress, a power exclusively vested in the United States House of Representatives. Because the Challenge Statute usurps Congress' constitutional responsibilities, it violates Article 1, § 5 of the U.S. Constitution.

Finally, Congress used its constitutionally specified authority to remove the political disability found in Section Three of the Fourteenth Amendment from any Representative other than those who served during the 36th and 37th Congresses. Rep. Cawthorn is a Member of the 117th Session of Congress, so the 1872 Act removed any disability under Section Three from Rep. Cawthorn. Since Section Three does not apply to Rep. Cawthorn (or any Member holding office after the 37th Congress), the application of Section Three to Rep. Cawthorn is prohibited by federal law.

Because Rep. Cawthorn is likely to succeed on the merits of his constitutional claims; he would be irreparably harmed by the unconstitutional and unlawful enforcement of the Challenge Statute; the balance of harms favors Rep. Cawthorn; and the public interest is served by

**Pl.'s Mem. in Supp. of**
**Prelim. Inj.**                                    2

enjoining unconstitutional statutes, this Court should enjoin the NCSBE from enforcing the Challenge Statute.

## Statement of Facts

### Challenge Statute

Under North Carolina law, any qualified voter registered in the same district ("**Challenger**") as the office of a candidate for "any elective office in the State" ("**Candidate**") may file a challenge that the Candidate does not meet the constitutional or statutory qualifications for the office, including residency. ("**Challenge**") N.C.G.S. §§ 163-127.1, 127.2(b); *see generally* N.C.G.S. § 163-127.1, *et seq*. ("**Challenge Statute**"). A Challenge must be filed with the election board receiving the notice of the candidacy no later than 10 business days after the close of the filing period for notice of candidacy. N.C.G.S. § 163-127.2(a). The Challenge must be made in a verified affidavit by a challenger, *based on reasonable suspicion* or belief of the facts stated. *Id*. at (b) (emphasis added).

**Challenge Process**

**A. Panel appointment**

If the Challenge is filed against a Candidate for an office "contains territory in more than one county but is less than the entire State," the NCSBE[1] will appoint a panel ("**Panel**") to conduct hearings on the Challenge. N.C.G.S. § 163-127.3(2). Under North Carolina law, the composition

---

[1]Defendants Mr. Damon Circosta, Ms. Stella Anderson, Mr. Jeff Carmon, Mr. Stacy Eggers IV, Mr. Tommy Tucker, all serve as members of the NCSBE. Defendant Karen Brinson Bell serves as the NCSBE's Executive Director. All Defendants are named in this suit in their official capacities. For the purposes of this memorandum, "NCSBE" refers collectively to Defendants, named in their official capacities.

**Pl.'s Mem. in Supp. of**
**Prelim. Inj.**                    3

of the Panel for such a Challenge must include: (1) "at least one member of the county board of elections in each county in the district of the office"; (2) "an odd number of members, no fewer than three and no more than five"; (3) appointed "members from each county in proportion to the relative total number of registered voters of the counties in the district for the office"; and (4) appointed, "to the extent possible, . . . members affiliated with different political parties in proportion to the representation of those parties on the county boards of elections in the district for the office." *Id.*

## B. Conduct of panel hearing

The Panel must: (1) "[w]ithin five business days after the challenge is filed, designate and announce the time of the hearing and the facility where the hearing will be held"; (2) "[a]llow for depositions prior to the hearing, if requested by the challenger or candidate before the time of the hearing is designated and announced"; (3) "[i]ssue subpoenas for witnesses or documents, or both, upon request of the parties or upon its own motion"; and (4) "[r]ender a written decision within 20 business days after the challenge is filed and serve that written decision on the parties." N.C.G.S. § 163-127.4(a). The Panel must give notice of the hearing to the Challenger, the Candidate, other candidates filing for the same office, the county chair for each political party, and for those persons requesting notification. *Id.* at (b). The notice must include the copy of the Challenge or a summary of its allegations. *Id.*

The Panel may allow evidence to be presented at the hearing, in the form of affidavits, or the Panel may examine witnesses, who must testify under oath. *Id.* at (c)(1). The Panel has the authority to issue subpoenas for witnesses or documents, or both. *Id.* The Panel may receive

**Pl.'s Mem. in Supp. of
Prelim. Inj.**                                   4

Case 5:22-cv-00050-M   Document 2-1   Filed 01/31/22   Page 10 of 36

evidence at the hearing from "any person with information concerning the subject of the [C]hallenge." *Id.* at (2). The hearing must be recorded by a reporter, and the full record must be preserved by the Panel "until directed otherwise" by the NCSBE. *Id.* at (3).

After the hearing, the Panel "shall make a written decision on each [C]hallenge by separately stating findings of facts, conclusions of law, and an order." *Id.* at (d).

## C. Burden of Proof

When a Candidate is subject to a Challenge, "[t]he burden of proof *shall be upon the candidate, who must show by a preponderance of the evidence* of the record as a whole that he or she is qualified to be a candidate for the office." N.C.G.S. § 163-127.5(a) (emphasis added). If the Challenge is based upon the Candidate's residency, the Candidate must show: (1) an abandonment of the first domicile, coupled with an intent not to return to the first domicile; (2) the acquisition of a new domicile by actual residence at another place; and (3) the intent of making the newer domicile a permanent domicile. *Id.* at (b). The statute does not designate what type of proof the Candidate must provide to meet his burden of proof for any Challenge not based upon residency. *See id.*

The NCSBE is vested with certain general powers, which include, *inter alia*: general supervision of the elections in the State; appointing and advising members of the county boards of elections; investigation and administration of election laws; determination of the form and content of ballots; and certifying to the appropriate county boards of elections the names of candidates for district offices. N.C.G.S. § 163-22. Therefore, if the NCSBE determines a challenged Candidate does not meet the "qualifications" for office, it could remove that

Candidate's name from the ballot, via its certification authority, thereby preventing that Candidate from running for office.

### D. Appeals

An appeal from a Panel decision may be appealed to the NCSBE as a whole by either the Challenger or a Candidate "adversely affected by the panel's decision." N.C.G.S. § 163-127.6(a). The appeal must be taken within two business days after the Panel serves its written decision on the parties. *Id.* The NCSBE must base its appellate decision "on the whole record of the hearing conducted by the panel and render its opinion on an expedited basis." *Id.* From the final order or decision by the NCSBE, appeal as of right lies directly to the North Carolina Court of Appeals. *Id.*

Generally, the appellate courts review administrative agency decisions with a "highly deferential" standard. *Friends of Cap. Crescent Trail v. United States Army Corps of Engineers*, 855 F. App'x 121, 125 (4th Cir. 2021) (finding agency action sustained if it "provides an explanation of its decision that includes a rational connection between the facts found and the choice made"). Questions of law are reviewed de novo. *Herrera-Martinez v. Garland*, 22 F.4th 173, 180 (4th Cir. 2022).

### Cawthorn Challenge

Rep. Cawthorn currently serves as a Member of the U.S. House of Representatives, for North Carolina's 11th congressional district. Rep. Cawthorn filed his candidacy, for the upcoming midterm elections, for North Carolina's 13th congressional district on December 7, 2021. *See* NCSBE Candidate List Excerpt, Ex. A.

On January 10, 2022, several Challengers filed a Challenge against Rep. Cawthorn. Cawthorn Challenge, Ex. B. The Cawthorn Challenge stated that Rep. Cawthorn "does not meet the federal constitutional requirements for a Member of the U.S. House of Representatives and is therefore ineligible to be a candidate for such office." *Id*. at ¶ 1. The Cawthorn Challenge was based upon claims that Rep. Cawthorn engaged in "insurrection or rebellion" against the United States and was ineligible to run for Congress under Section Three of the Fourteenth Amendment to the U.S. Constitution. U.S. Const. amend. XIV, § 3. Rep. Cawthorn vigorously denies he engaged in "insurrection or rebellion" against the United States, but this litigation is not based in Rep. Cawthorn's factual defenses. Instead, this matter is before the court based upon various constitutional challenges to the North Carolina Challenge Statute itself.

On January 11, 2022, the North Carolina Superior Court in Wake County issued a stay on all Challenges filed with the NCSBE until a "final resolution" is reached on the ongoing litigation challenging North Carolina's recently-redistricted congressional districts. Stay Order, Ex. C. The congressional districts, as drawn by the North Carolina legislature have been upheld, but the Supreme Court of North Carolina will be hearing arguments on the districts on February 2, 2022. *North Carolina League, of Conservation Voters, Inc. v. Hall*, No. 21 CVS 015426, 2022 WL 124616 (N.C. Super. Jan. 11, 2022). Rep. Cawthorn intends to run in the midterm elections in an appropriate congressional district for North Carolina, after the congressional map question is resolved (by either continuing his candidacy as filed or re-filing an a different district). Compl. at ¶ 48.

# Argument

## I. Cawthorn has standing.

For there to be a case or controversy under Article III, the plaintiff must have a "personal stake" in the case—in other words, standing. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). As a candidate for Congress, Rep. Cawthorn is subject to the Challenge Statute's provisions, and in fact, was challenged under the statute. For a plaintiff to establish standing under Article III, he must (1) have suffered an "injury in fact"; (2) that is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Here, Rep. Cawthorn meets all three Article III standing requirements under *Lujan*.

## A. Rep. Cawthorn has an injury in fact.

In order to have an injury in fact, a plaintiff must have an invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) "actual or imminent, not conjectural or hypothetical," *Id.* at 560 (internal quotations and citations omitted).

Rep. Cawthorn is subject to the Challenge Statute. If successful, a Challenge to his candidacy would prevent him from running for Congress, which is quintessential First Amendment activity. *Washington v. Finlay*, 664 F.2d 913, 927-28 (4th Cir. 1981) (acknowledging the First Amendment's protection of the freedom of association and of the rights to run for office, to have one's name on the ballot, and to present one's views to the electorate). His potential injury is not in any way hypothetical—not only is Rep. Cawthorn subject to the Challenge Statute, a Challenge was recently filed (although stayed) against him. The NCSBE has

the power to prevent Rep. Cawthorn's name from appearing on the ballot, if a Challenge against his candidacy is ultimately successful under the Challenge Statute. N.C.G.S. § 163-22.

**B. Rep. Cawthorn's injury is traceable to the NCSBE's enforcement of the Challenge Statute.**

Rep. Cawthorn's potential disqualification from running for office on the basis of a successful Challenge Statute is directly traceable to the NCSBE. Under the Challenge Statute, the NCSBE has the authority to determine, after a hearing, whether the challenged Candidate is disqualified from running for that office. N.C.G.S. § 163-127, et seq. The decision of the NCSBE is adjudicatory and is appealable to the North Carolina Court of Appeals. In this way, Rep. Cawthorn's constitutional injuries, as detailed herein, are directly traceable to government actors, via enforcement by the NCSBE and subsequent appellate decisions by the North Carolina State Court system.

**C. Rep. Cawthorn's injury is redressable by the court enjoining the statute as unconstitutional.**

By granting Rep. Cawthorn's motion for injunctive relief, the NCSBE will be prevented from enforcing the Challenge Statute against Rep. Cawthorn. Such an injunction will redress the violations of Rep. Cawthorn's constitutional rights under the First and Fourteenth Amendments in their entirety.

## II. The Younger abstention doctrine does not apply because there is no ongoing state proceeding.

Federal courts must normally "fulfill their duty to adjudicate federal questions properly brought before them." *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 238 (1984). However, "interests of comity and federalism counsel federal courts to abstain from jurisdiction whenever

federal claims have been or could be presented in ongoing state judicial proceedings that concern important state interests." *Id.* at 237-38. This principle of abstention is known as the *Younger* abstention doctrine. *See generally Younger v. Harris*, 401 U.S. 37 (1971).

When state judicial proceedings have not commenced, *Younger* does not bar a federal court from action. *See Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 433 (1982). Likewise, when the state proceedings do not afford an adequate opportunity to raise the constitutional claims at issue, *Younger* does not apply. *Moore v. Sims*, 442 U.S. 415, 430 (1979). Here, Younger does not apply because there is no "ongoing state judicial proceeding," the current congressional districts are in effect, pending appeal, and the NCSBE has no authority to decide the constitutional issues before this Court.

**A.  The North Carolina court stayed all candidacy challenges before the NCSBE.**

The Fourth Circuit has not reached the question of whether a state's proceedings are "ongoing," for the purposes of a *Younger* analysis, if the proceeding is stayed. The Tenth Circuit does not apply *Younger* to stayed proceedings. *Hackford v. Utah*, 827 F. App'x 808, 811 (10th Cir. 2020) (finding a state court's choice to "stay[ ] its own proceedings [ ] favor of federal resolution of the issues" by eliminating  an "essential predicate to *Younger* abstention," namely, "the presence of an ongoing state prosecution"). The Third Circuit holds that "state proceedings are ongoing for *Younger* abstention purposes, notwithstanding [a] state court's stay of proceedings," if the state proceeding "was pending at the time [the plaintiff] filed its initial complaint in federal court." *PDX N., Inc. v. Comm'r New Jersey Dep't of Lab. & Workforce Dev.*, 978 F.3d 871, 885 (3d Cir. 2020), cert. denied sub nom. *PDX N., Inc. v. Asaro-Angelo*, 142

Pl.'s Mem. in Supp. of
Prelim. Inj.                                     10

Case 5:22-cv-00050-M   Document 2-1   Filed 01/31/22   Page 16 of 36

S. Ct. 69 (2021).

The current congressional districts, drawn after the 2020 census, are subject to current litigation before the North Carolina Supreme Court. *See infra* at Part II.B. Because of this pending litigation, the Superior Court Division of Wake County issued a stay against all candidacy challenges currently filed in the NCSBE. Stay Order, Ex. C. Here, the Tenth Circuit's reasoning is persuasive—the stay of North Carolina's proceedings means that there is not an ongoing proceeding that would counsel in favor of the application of the *Younger* abstention.

Moreover, the circumstances surrounding the reason why the stay was issued, the potential consequences of the pending redistricting litigation, and the NCSBE's lack of authority to decide the constitutional claims all favor federal adjudication instead of abstention.

**B.  The current congressional districts are in effect, pending appeal.**

After the 2020 Census, North Carolina's General Assembly redrew the State's congressional districts; the new districts were ratified by law on November 4, 2021. *North Carolina League, of Conservation Voters, Inc.*, 2022 WL 124616 at \*14. Several lawsuits were brought, challenging the newly redrawn districts as unconstitutional. *Id*. at \*1. The trial court panel denied the plaintiff's claims, *id.* at \*115, thereby upholding the congressional districts as drawn, but plaintiffs have appealed to the North Carolina Supreme Court.

As it relates to this matter, North Carolina's ongoing litigation regarding redistricting does not counsel against this Court's ability to decide the constitutionality of the Challenge Statute. First, whatever decision eventually is reached, North Carolina will undoubtedly have congressional districts in place. If the current congressional districts remain in place, Rep.

Cawthorn is a candidate for the 13th congressional district and will be subject to a Challenge. If the congressional districts are redrawn, Rep. Cawthorn intends to file his candidacy in the appropriate district, Compl. at ¶ 48 , and would be subject to the Challenge Statute.

The redistricting litigation has nothing to do with the Challenge Statute, which is not implicated. However, the Challenge Statute directly impacts Rep. Cawthorn, as he has been challenged under it, and could be subject to such a Challenge, even if the redistricting causes him to file his candidacy in a different congressional district.

**C. The NCSBE has no authority to decide the constitutional issues at hand.**

The judicial power of North Carolina is fully vested in the judicial branch of the state government. N.C. Const. art. IV, § 1. The only exception to this sole judicial power is when the North Carolina General Assembly vests an administrative agency, "pursuant to law such judicial powers as may be reasonably necessary as an incident to the accomplishment of the purposes for which the agencies were created." N.C. Const. art. IV, § 3. An administrative agency "has no power to promulgate rules and regulations which alter or add to the law it was set up to administer or which have the effect of substantive law." *Hall v. Toreros, II, Inc.*, 176 N.C. App. 309, 318–19 (2006), aff'd, ordered not precedential, 363 N.C. 114 (2009) (internal citations omitted). Thus, the NCSBE has no power to hear or decide a constitutional challenge to its own statute, as mounted here.

In certain limited contexts, when state administrative agencies are charged with enforcement and construction of [a] Rule, the agency's view is entitled to "respectful consideration." *L. Students C.R. Rsch. Council, Inc. v. Wadmond*, 401 U.S. 154, 162–63 (1971). The Court

cautioned, however, that such consideration was dependent on the agency: (1) narrowly

construing the statute at issue; (2) being "fully cognizant" of protected constitutional freedoms;

and (3) not placing the burden of proof upon those subject to the agency's determination. *Id.*

Here, the NCSBE does not have the authority to construe the Challenge Statute, so is not subject

to this "respectful consideration."

Furthermore, the NCSBE is vested with certain general powers, which include: general

supervision of the elections in the State, appointing and advising members of the county boards

of elections, investigation and administration of election laws, determination of the form and

content of ballots, and certifying to the appropriate county boards of elections the names of

candidates for district offices. N.C.G.S. § 163-22.

Under the Challenge Statute, the NCSBE has the authority to determine whether a

Challenged Candidate is "qualified" to be on the ballot. *See generally* N.C.G.S. § 163-127.1, *et*

*seq.* Pursuant to its certification authority, the NCSBE, upon determining a Candidate is not

qualified, can remove or prevent that Candidate's name from appearing on the ballot.

But the NCSBE does not have the authority to determine the constitutionality of the

Challenge Statute itself. Such action would violate the prohibition against an agency "alter[ing]

or add[ing] to the law it was set up to administer or which have the effect of substantive law."[2]

*Hall*, 176 N.C. App. at 318–19. If the NCSBE determined all, or a portion, of the Challenge

---

[2] Even if the NCSBE had the authority to construe the Challenge Statute, it has not demonstrated it meets any of the requirements of: narrowing its construction or the NCSBE's cognition of the constitutional freedoms. In addition, the burden shifting framework of the Challenge Statute eliminates consideration of such construction. See Part III.A.2.

Statute was unconstitutional, the statute it is set up to administer would be altered, by definition.

### III. Cawthorn is entitled to a preliminary injunction.

"Parties seeking a preliminary injunction must demonstrate that (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm, (3) the balance of hardships tips in their favor, and (4) the injunction is in the public interest." *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 722 F.3d 591, 595 (4th Cir. 2013) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

Rep. Cawthorn is entitled to a preliminary injunction because he can demonstrate all four elements required. He is likely to succeed on the merits of his constitutional claims; the violation of his constitutional rights leads inexorably to irreparable harm and the balance of hardships favors Rep. Cawthorn. Likewise, enjoining the NCSBE from enforcing an unconstitutional statute serves the public interest.

### A. Cawthorn is likely to succeed on the merits.

#### 1. The statute is unconstitutional because its "reasonable suspicion" standard is insufficient justification under the First Amendment to trigger a government investigation.

Running for political office is quintessential First Amendment activity and afforded great protection. *See Clements v. Fashing*, 457 U.S. 957, 985 (1982)*,* (Brennan J., dissenting) (finding "[pursuing political office] is clearly protected by the First Amendment and restrictions on it must be justified by the State's interest in ensuring the continued proper performance of current public duties"); *Washington*, 664 F.2d at 927-28 (acknowledging the First Amendment's protection of the freedom of association and of the rights to run for office, to have one's name on

the ballot, and to present one's views to the electorate).

When an individual files a Challenge under the Challenge Statute claiming "reasonable suspicion," it automatically triggers a hearing by the NCSBE or by a Panel appointed by the NCSBE. N.C.G.S. §§ 163-127.3; 127.4 (the NCSBE "shall" appoint a panel, the panel "shall" designate, announce, and conduct a hearing on the Challenge, which includes the power to subpoena and depose witnesses, and "shall" render a decision on the Challenge). The NCSBE is an administrative agency authorized to carry out its statutorily defined powers and is therefore a government actor, required to act within the boundaries of the U.S. Constitution. *See* N.C.G.S. § 163-22. When a Challenge is filed under the Challenge Statute, the Challenger is only required to filed a verified affidavit, *based on reasonable suspicion* or belief of the facts stated disqualify the Candidate from running for office.. N.C.G.S. § 163-127.2(b). (emphasis added).

When someone is exercising his First Amendment rights, reasonable suspicion is not enough to infringe on the fundamental right concerned. For instance, police are not able to arrest someone who is peacefully protesting without probable cause. *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013); *see also Lowe v. Spears*, 258 F. App'x 568, 570 (4th Cir. 2007) (holding arresting person solely based on speech that questions or opposes police action violates First Amendment) (citing *City of Houston v. Hill*, 482 U.S. 451, 462–63, (1987)). Probable cause means "a fair probability that contraband or evidence of a crime will be found." *Alabama v. White*, 496 U.S. 325, 330 (1990). Reasonable suspicion is a less demanding standard than probable cause. *Id.* "Reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also . . . can arise from

information that is less reliable than that required to show probable cause." *Id.*

Although the Challenge Statute does not implicate a criminal penalty, the evaluation of the constitutional issues here are analogous—a Challenged Candidate will have to defend himself via the production of evidence and be subject to a hearing, similar to someone who is unlawfully arrested for peacefully protesting. The Court has been clear that a reasonable suspicion standard is not enough to infringe upon the peaceful protestor's right to free speech—likewise, it cannot be enough to infringe upon someone's First Amendment right to run for political office.

2. **The burden shifting provision of the Challenge Statute is unconstitutional under the Due Process Clause of the Fourteenth Amendment because it requires Cawthorn to prove a negative.**

When a Candidate is subject to a Challenge, "[t]he burden of proof *shall be upon the candidate, who must show by a preponderance of the evidence* of the record as a whole that he or she is qualified to be a candidate for the office." N.C.G.S. § 163-127.5(a) (emphasis added). In the case of a Challenge based upon residency, the proof the Candidate must provide is relatively straightforward—documents showing a change of address could easily be provided by the Candidate. The same is not true for a Challenge filed based on the "disqualification clause" of the Fourteenth Amendment. Under the Challenge provision, the Candidate is required to prove by a preponderance of evidence showing he didn't do something (e.g., prove that he didn't engage in "insurrection or rebellion"). Such burden shifting is unconstitutional under Due Process Clause of the Fourteenth Amendment.

When processes implicate free speech, "the operation and effect of the method by which speech is sought to be restrained must be subjected to close analysis and critical judgment in the

light of the particular circumstances to which it is applied." *Speiser v. Randall*, 357 U.S. 513, 520 (1958) (internal citations omitted). The vindication of legal rights often depends "on *how* the factfinder appraises the facts than on a disputed construction of a statute or interpretation of a line of precedents." *Id.* (emphasis added). Thus, the United States Supreme Court held that "the procedures by which the facts of the case are determined assume an importance fully as great as the validity of the substantive rule of law to be applied. And the more important the rights at stake the more important must be the procedural safeguards surrounding those rights." *Id.* at 520-21. This is especially true because "only considerations of the greatest urgency can justify restrictions on speech," and so the procedural safeguards protecting free speech "are of special importance and the validity of the restraint may turn on the safeguards which they afford." *Id.* at 521.

In both criminal and civil contexts, the Court has struck down state statutes unfairly shifting the burden of proof. *Id.* at 523-24 (citing *McFarland v. Am. Sugar Ref. Co.*, 241 U.S. 79, 86 (1916) (criminal); *W. & A.R.R. v. Henderson*, 279 U.S. 639 (1929) (civil)). This principle holds true whether the process at issue is administrative or judicial. *Waters*, 511 U.S. at 669–70 (upholding *Speiser* and finding "speech can be chilled and punished by administrative action as much as by judicial processes").

The *Speiser* Court held that when, throughout the judicial and administrative proceedings, the burden lies on the individual to prove he "falls outside" of the statutory framework at issue, such burden shifting violates the Due Process Clause of the Fourteenth Amendment. *Speiser*, 357 U.S. at 522, 525-26. (finding where "transcendent value of speech is involved, due process

certainly requires . . . the State bear the burden of persuasion to show that the appellants engaged in criminal speech"). When the statutory framework violates due process, the person subject to such a statute is " not obliged to take the first step in such a procedure." *Id.* at 529.

Those running for political office are sometimes required to provide "proof" that they are not members of organizations that advocated for the violent overthrow of the government. *Id.* at 527 (finding principal aim of those statutes was not to penalize political beliefs but to deny positions to persons supposed to be dangerous because the position might be misused to the detriment of the public). But in all of those cases, the candidate was only required to sign an affirmative oath pledging loyalty to the country and to the Constitution in order to meet his "burden of proof." *Id.* at 528. Once the Candidate signed such a "loyalty oath," no further proof was required for the Candidate to prove his right to retain his position. *Id.*

The *Waters* Court recognized that in some contexts, such as public employment, the government's role justified giving it a "freer hand in regulating the speech." *Waters*, 511 U.S. at 671. Here, the government's role does not give it a freer hand to regulate one of the core constitutional rights—that of the Candidate's exercise of his First Amendment right of running for political office**.** Thus, since the Challenge statute would require the Candidate to prove he didn't do what he is accused of doing by the Challenger's "reasonable suspicion," it violates the Due Process Clause of the Fourteenth Amendment.

Furthermore, the appellate courts review administrative agency decisions and underlying factual conclusions for those decisions with a "highly deferential" standard. *Friends of Cap. Crescent*, 855 F. App'x 121 at 125. This deferential standard would further violate the

Candidate's due process rights by deferring to factual conclusions arrived at by a process that itself violates those same rights.

The Challenge Statute's burden shifting provision violates the Due Process Clause of the Fourteenth Amendment by requiring Rep. Cawthorn prove a negative (i.e., that he did not engage in "insurrection or rebellion.").

### 3. The statute is unconstitutional under Article 1, § 5 of the U.S. Constitution because Congress is the exclusive judge of the qualifications of its Members.

Each House shall be the Judge of the Elections, Returns and Qualifications of its own Members, and a Majority of each shall constitute a Quorum to do Business; but a smaller Number may adjourn from day to day, and may be authorized to compel the Attendance of absent Members, in such Manner, and under such Penalties as each House may provide.

U.S. Const. art. I, § 5, cl. 1.

Voters have unfettered discretion in voting to independently evaluate whether federal candidates meet the constitutional qualifications for office. Derek T. Muller, *Scrutinizing Federal Electoral Qualifications*, 90 Ind. L.J. 559, 592 (2015) ("**Muller**") (citations omitted). But Congress has an exclusive role in judging the qualifications of its own members to determine if they are eligible to take a seat in Congress. *Id*. at 611 (collecting cases). This exclusive role is consistent with the Supreme Court's logic in *Roudebush v. Hartke*. 405 U.S. 15 (1972). R. Vance Hartke was declared the winner of the race for U.S. Senator, but Indiana law authorized a recount. *Id*. at 16-17. The Court found that the State of Indiana had a broad power to regulate the election of Senators, which included conducting and overseeing recounts. *Id*. at 24. The *Roudebush* Court held that a recount doesn't usurp the Senate's function because it doesn't "frustrate the Senate's ability to make an independent final judgment." *Id*. at 25-26 (cleaned up).

**Pl.'s Mem. in Supp. of**
**Prelim. Inj.** 19

Because the Senate was still free to accept or reject the apparent winner in either count, and to conduct its own recount, if it chose, the state recount did not violate the Article 1, § 5 of the Constitution. *Id.* Two cases, one prior to *Roudebush* and one subsequent to it, also support the principle at issue. In the first, an allegedly unqualified individual was excluded from the ballot, and the Supreme Court of New Mexico found that whether the candidate was a "sojourner" or an "inhabitant" of New Mexico, was not for the State to decide, but rather, was a matter for Congress. *State ex rel. Chavez v. Evans*, 446 P.2d 445, 448 (N.M. 1968). In the other, the individual was included, but the court erred on the side of allowing the candidate to appear on the ballot and of deferring to Congress. *Cox v. McCrery*, No. Civ.A.06-2191, 2007 WL 97142, at *1 (W.D. La. Jan. 5, 2007).

Thus, the power delineated to states is narrow—states cannot interfere with Congress's ability to make an independent judgment, and states can only engage in a ministerial manner, not an adjudicative manner. Kristen R. Lisk, Note, *The Resolution of Contested Elections in the U.S. House of Representatives: Why State Courts Should Not Help with the House Work*, 83 N.Y.U. L. Rev. 1213, 1223 (2008). "If a state refuses to put a candidate on the ballot because it believes the candidate for a house of Congress is not qualified, that state is effectively usurping the function of Congress" by making its own independent evaluation of the Candidate's qualifications. Muller, 90 Ind. L.J. at 594–95.

Here, the Challenge Statute permits the State of North Carolina to make its own independent evaluation of whether a Candidate is constitutionally qualified to be a Member of the U.S. House of Representatives. N.C.G.S. §§ 163-127.1, 127.2(b). This function reaches far beyond the

Case 5:22-cv-00050-M   Document 2-1   Filed 01/31/22   Page 26 of 36

State's authority to regulate its elections, conduct counts and recounts of votes, and other administrative functions allowed by our system of federalism. North Carolina cannot frustrate the House of Representative's ability to make its independent, final judgment of the qualifications of a Member. Because the Challenge Statute directly usurps Congress' constitutional responsibilities, it violates Article 1, § 5 of the U.S. Constitution.

### 4. Application of Section Three of the Fourteenth Amendment to Cawthorn is prohibited by federal law.

Section Three of the Fourteenth Amendment reads,

> No person shall be a Senator or Representative in Congress, or elector of President and Vice President, or hold any office, civil or military, under the United States, or under any State, ***who, having previously taken an oath, as a member of Congress***, or as an officer of the United States, or as a member of any State legislature, or as an executive or judicial officer of any State, to support the Constitution of the United States, ***shall have engaged*** in insurrection or rebellion against the same, or given aid or comfort to the enemies thereof. But Congress may by a vote of two-thirds of each House, remove such disability.

U.S. Const. amend. XIV, § 3 (emphasis added). Of course, Congress does not have the power to "repeal" a constitutional Amendment, but the plain language of the Amendment itself gave Congress the power to remove the disability in Section Three. Removing the disability of being prevented from serving as a Member of Congress is not a "pardon," as a pardon is an "act or an instance of officially nullifying punishment or other legal consequences of a crime." *Pardon*, Black's Law Dictionary (11th ed. 2019). Congress did not repeal this provision of the Constitution; it did not "pardon" any Members from crimes. But Congress did specifically remove the political disability defined in Section Three in a series of acts passed by the requisite

two-thirds of both Houses of Congress, some of which apply to Rep. Cawthorn, if he were erroneously determined to have "engaged in insurrection or rebellion" against the United States.

The first is the Amnesty Act of 1872, which reads, "all political disabilities imposed by the third section of the fourteenth amendment to the Constitution of the United States are hereby removed from all persons whomsoever, except Senators and Representatives of the thirty-sixth and thirty-seventh Congresses, officers in the judicial, military, and naval service of the United States, heads of departments, and foreign ministers of the United States." United States Statutes at Large, 42 Cong. Ch. 194, May 22, 1872, 17 Stat. 142 ("**1872 Act**"). By the plain language of this Act, the political disability was removed from any Representative other than those of the two enumerated Congresses. Rep. Cawthorn is a Member of the 117th Session of Congress, so the 1872 Act removed any disability under Section Three from Rep. Cawthorn.

The second is the Amnesty Act of 1898, which reads, "the disability imposed by section three of the Fourteenth Amendment to the Constitution of the United States heretofore incurred is hereby removed." United States Statutes at Large, 55 Cong. Ch. 390, June 7, 1898, 30 Stat. 432 ("**1898 Act**"). The plain language of the 1898 Act removes the disability from any of the listed officeholders, etc. who had previously incurred such a disability (i.e., everyone else whose disability wasn't previously removed under the 1872 Act).

Both Acts were passed following the Civil War. The 1898 Act's use of the word "heretofore" indicates a backwards reach into past events, obviously the Civil War. However, the 1872 Act does not include that same backwards perspective. The results of the differences in perspectives between the Acts can be seen in Congress' application of the 1898 Act.

In 1936, the House of Representatives refused to seat Victor Berger, a member of the House of Representatives who was excluded from office after criticizing American involvement in World War I. *See* Gerard N. Magliocca, *Amnesty and Section Three of the Fourteenth Amendment*, 36 Const. Comment. 87, 130 (2021). As Magliocca notes, Berger's case is a quirky example that predates modern First Amendment doctrine. *Id*. The House did not even consider the 1872 Act when determining whether Berger could be seated, instead focusing only on the language of the 1898 Act. 6 Clarence Cannon, *Cannon's Precedents of the House of Representatives of the United States* 52-63 (1936). In Berger's case, the House held that the "heretofore" language in the 1898 Act meant the removal of the disabilities could only apply to disabilities incurred previously, but Congress could not remove future disabilities. *Id*. This reasoning ignores the plain language of the 1872 Act and the disability defined in Section Three altogether.

Section Three does not specify Congress only has the power to remove past disabilities, it specifies Congress has the power to remove "such disability." "Such disability" refers to the disability of someone who has previously taken an oath as a member of Congress who "*shall have engaged*" in insurrection from taking office. "Shall have" followed by a past participle forms the future perfect tense and shows an action will occur before another action in the future.[3] The grammatical reading of Section Three means that Congress had the power to remove "such

---

[3] Elizabeth O'Brian, *What is future perfect tense?*, GRAMMAR REVOLUTION, (Jan. 28, 2022, 2:08 PM), https://www.english-grammar-revolution.com/future-perfect-tense.html

**Pl.'s Mem. in Supp. of Prelim. Inj.**                    23

disability: for both Members who had incurred the disability and those who had not incurred such disability, but could if they engaged in the applicable prohibitions in the future.

Rep. Cawthorn has not been convicted of any crime, so Section Three or the 1872 Act cannot be viewed as a prospective pardon. Section Three refers entirely to the political, not criminal, consequences of "insurrection." The plain language of the 1872 Act removes this political consequence from any Representative other than those who served during the 36th and 37th Congresses. Rep. Cawthorn is a Member of the 117th Session of Congress, so the 1872 Act removed the ability to apply Section Three to Rep. Cawthorn. Since Section Three does not apply to Rep. Cawthorn (or any Member holding office after the 37th Congress), the application of Section Three to Rep. Cawthorn is prohibited by federal law.

**B. Cawthorn will suffer irreparable harm.**

Deprivation of a constitutional right, even for a short period of time, constitutes irreparable harm. *Elrod v. Burns*, 427 U.S. 347, 373 (1976). "When the harm alleged by the plaintiff is the deprivation of a constitutional right, the likelihood of success on the merits is so "inseparably linked" to the proving of an actual harm that the court may proceed directly to consider the merits of the plaintiff's action." *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 511 (4th Cir.2002) (internal quotation marks omitted). As a general rule, "the denial of a constitutional right ... constitutes irreparable harm for purposes of equitable jurisdiction." *Ross v. Meese*, 818 F.2d 1132, 1135 (4th Cir. 1987).

As analyzed *supra*, the Challenge Statue violates Rep. Cawthorn's First Amendment rights by allowing a Challenge to be based upon a voter's "reasonable suspicion." Part III.A.1. Further,

**Pl.'s Mem. in Supp. of Prelim. Inj.**         24

the Challenge Statute's requirement that Rep. Cawthorn prove, by a preponderance of the evidence, that he is *not* disqualified, violates his due process rights under the Fourteenth Amendment. Part III.A.2. The Challenge Statute is also unconstitutional under Article 1, § 5 of the U.S. Constitution because Congress is the exclusive judge of the qualifications of its Members. Part III.A.3. Finally, application of Section Three of the Fourteenth Amendment to Rep. Cawthorn is prohibited by federal law. Part III.A.4.

Because the Challenge Statute violates such fundamental constitutional and legal rights, and Rep. Cawthorn is subject to the Challenge Statute, he suffers irreparable harm

## C. The balance of hardships favors Cawthorn.

The likelihood of success on the merits is the first and primary factor to analyze when considering a motion for preliminary injunction on constitutional claims. *Giovani Carandola, Ltd.* 303 F.3d at 511. If this Court finds Rep. Cawthorn is likely to succeed on the merits, it will necessarily have found that the Challenge Statute is unconstitutional on the basis of all, or some of, Rep. Cawthorn's claims. Depriving Rep. Cawthorn of his constitutional right to run for political office, or forcing him to defend his right to do so based upon a constitutionally flawed process, would be a monumental hardship.

If enjoined, the NCSBE will suffer no lasting hardship from the inability to enforce an unconstitutional process. Enjoining the NCSBE from enforcing the Challenge Statute will not prevent its ability to administer either the primary or general elections this year. It would still be able to: generally supervise the elections in the State; appoint and advise members of the county boards of elections; investigate and administer other election laws; determine the form and

content of ballots; and certify to the appropriate county boards of elections the names of candidates for district offices (absent the ability to prevent unconstitutionally challenged candidates from running). *See* N.C.G.S. § 163-22.

**D. Public interest favors injunction.**

Upholding constitutional rights serves the public interest. *Newsom ex rel. Newsom v. Albemarle Cty. Sch. Bd.*, 354 F.3d 249, 261 (4th Cir. 2003). In contrast, the public interest is harmed when unconstitutional statutes are enforced and used against those seeking to lawfully exercise their constitutional rights.

But most importantly, the public interest is served in choosing the People's representatives by democratic processes, not by state bureaucrats, which Challengers propose here. The undemocratic scheme contained in the North Carolina Challenge provisions supplants voters for state bureaucrats who will determine who can represent the People. This is fundamentally anti-democratic and contrary to the public interest.

## Conclusion

The fundamental right of an individual to run for political office; to not be subject to an unjustified investigation; to not be required to "prove" his innocence; the proper role of Congress and the States in determining the qualifications of a Member of Congress; and, ultimately, whether state bureaucrats or voters will determine who is elected to Congress are at stake in this litigation.

**Pl.'s Mem. in Supp. of
Prelim. Inj.**                                          26

Rep. Cawthorn has standing in this litigation as he has suffered an injury in fact which is traceable to the NCSBE's enforcement of the Challenge Statute, and his injury is redressable by an injunction of the same. The *Younger* abstention doctrine does not apply hear because the state administrative procedure has been stayed, the NCSBE cannot hear constitutional challenges to its own statute, as mounted here, and all other factors weigh in favor of resolution of the issues raised by this Court.

The Challenge Statute's provision allows a Challenge to Rep. Cawthorn's "qualifications" to be a Candidate for Congress based upon only a "reasonable suspicion." This provision violates Rep. Cawthorn's First Amendment rights in the same way a peaceful protestor's rights would be violated if arrested based upon a reasonable suspicion.

The Challenge Statute's burden shifting provision violates the Due Process Clause of the Fourteenth Amendment by requiring Rep. Cawthorn prove a negative (i.e., that he did not engage in an "insurrection or rebellion").

The power in the Challenge Statute reaches far beyond the State's authority to regulate its elections, conduct counts and recounts of votes, and other administrative functions allowed by our system of federalism. North Carolina cannot invade or frustrate the House of Representative's exclusive power to make its independent, final judgment of the qualifications of a Member. Because the Challenge Statute directly usurps Congress' constitutional responsibilities, it violates Article 1, § 5 of the U.S. Constitution.

Finally, Congress used its constitutionally specified authority to remove the political disability found in Section Three of the Fourteenth Amendment from any Representative other

**Pl.'s Mem. in Supp. of**
**Prelim. Inj.**                           27

than those who served during the 36th and 37th Congresses. Rep. Cawthorn is a Member of the 117th Session of Congress, so the 1872 Act removed the ability to apply Section Three to Rep. Cawthorn. Since Section Three does not apply to Rep. Cawthorn (or any Member holding office after the 37th Congress), the application of Section Three to Rep. Cawthorn is prohibited by federal law.

Because Rep. Cawthorn is likely to succeed on the merits of his constitutional and legal claims; he would be irreparably harmed by the unconstitutional and unlawful enforcement of the Challenge Statute; the balance of harms favors Rep. Cawthorn; and the public interest is served by enjoining unconstitutional statutes, this Court should enjoin the NCSBE's ability to enforce the Challenge Statute.

Dated: January 31, 2022

Respectfully Submitted,

/s/ Josh Howard
Gammon, Howard & Zeszotarski, PLLC
The Water Tower Building
115 ½ West Morgan Street
Raleigh, NC 27601
jhoward@ghz-law.com
Phone: (919) 521-5878
Fax: (919) 882-1898
State Bar No. 26902
*Local Civil Rule 83.1(d) Counsel for Plaintiff*

/s/ James Bopp, Jr.
James Bopp, Jr., Ind. Bar No. 2838-84*
Melena S. Siebert, Ind. Bar No. 35061-15*
THE BOPP LAW FIRM
1 South 6th Street
Terre Haute, Indiana 47807
Telephone: (812) 232-2434
Facsimile: (812) 235-3685
jboppjr@aol.com
msiebert@bopplaw.com
*Attorneys for Plaintiff*
*Special Appearance Pending

Pl.'s Mem. in Supp. of
Prelim. Inj.                    28

## Certificate of Compliance with Type-Volume Limit

I hereby certify that this document complies with the word limit of Local Civil Rule (f)(2)(3) because, excluding the parts of the document exempted by Local Civil Rule (f)(1), this document contains 7,749 words and is less than 30 pages. All word counts were generated by the word processing software used.

January 31, 2022

/s/ Josh Howard
Josh Howard
*Counsel for Plaintiff*

**Pl.'s Mem. in Supp. of Prelim. Inj.**

## Certificate of Service

I hereby certify that on January 31, 2022, a copy of the foregoing document was served upon the following persons by email and on February 1, 2022 by hand delivery:

Mr. Paul Cax

Associate General Counsel

North Carolina State Board of Elections

430 N. Salisbury St.

Raleigh, NC 27611

/s/ Josh Howard

Attorney for Plaintiff

**Pl.'s Mem. in Supp. of**
**Prelim. Inj.**                                              30