UNITED STATES DISTRICT COURT
OF THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| **MADISON CAWTHORN**, an individual,<br><br>*Plaintiff*,<br><br>v.<br><br>**MR. DAMON CIRCOSTA**, in his official capacity as Chair of the North Carolina State Board of Elections, *et al.*<br><br>*Defendants*. | **Civ. No. 5:22-cv-00050-M** |

**Plaintiff's Reply in Support of Plaintiff's Motion for Preliminary Injunction**

**Pl.'s Reply ISO
Prelim. Inj.**

# Table of Contents

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I. This Court can properly exercise its jurisdiction over this matter and over NCSBE. . . . . . . . . . 1
        A.      Rep. Cawthorn has Article III standing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
              1.      Rep. Cawthorn has alleged an actual, particularized injury. . . . . . . . . . . . . 1
              2.      Rep. Cawthorn's claims are ripe. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
        B.      The *Younger* abstention doctrine does not apply. . . . . . . . . . . . . . . . . . . . . . . . . . 4

II. Rep. Cawthorn is likely to succeed on the merits. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        A.      Rep. Cawthorn's First Amendment claim is likely to succeed. . . . . . . . . . . . . . . . 6
        B.      Rep. Cawthorn's Due Process claim is likely to succeed. . . . . . . . . . . . . . . . . . . 8
        C.      Rep. Cawthorn's claim based upon Article 1, § 5 of the U.S. Constitution is likely
               to succeed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

III. The considerations of irreparable harm, balance of equities, and public interest favor Rep.
     Cawthorn. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

# Table of Authorities

**Cases**

*Abbott Labs v. Gardner*, 387 U.S. 136 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Califano v. Sanders*, 430 U.S. 99 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Charter Fed. Sav. Bank v. Off. of Thrift Supervision*, 976 F.2d 203 (4th Cir. 1992), as amended (Nov. 2, 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*G.G. ex rel. Grimm v. Gloucester Cnty. Sch. Bd.*, 822 F.3d 709 (4th Cir. 2016), cert. granted on other grounds, ––– U.S. ––––, 137 S.Ct. 369 L.Ed.2d 283 (2016). . . . . . . . . . . . . . . . . . . . . . . . 3

*Hall v. Toreros, II, Inc.*, 176 N.C. App. 309 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Hall v. Toreros, II, Inc.*, 363 N.C. 114 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Lowe v. Spears*, 258 F. App'x 568 (4th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Mathews v. Eldridge*, 424 U.S. 319 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982) . . . . . . . . . . . 4, 5

*Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982) . . . . . . . . . . . . . 4

*Moore v. Sims*, 442 U.S. 415 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Moore v. Sims*, 442 U.S. 415 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Newcomb v. Brennan*, 558 F.2d 825 (7th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Shirvinski v. U.S. Coast Guard*, 673 F.3d 308 (4th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Speiser v. Randall*, 357 U.S. 513 (1958). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Tobey v. Jones*, 706 F.3d 379 (4th Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Travis v. Reno*, 163 F.3d 1000 (7th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Washington v. Finlay*, 664 F.2d 913 (4th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1**

*Western & Atlantic. R.R. v. Henderson*, 279 U.S. 639 (1929) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**Constitutions, Statutes, and Rules**

N.C.G.S. § 163-114(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

N.C.G.S. §§ 163-114(a); 163-13. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

U.S. Const. Amend. XIV, § 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

U.S. Const. art. I, § 2, cl. 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**Other Authorities**

Derek Muller, "Adding qualifications for congressional candidates and a Section 3 puzzle," Election Law Blog, February 7, 2022 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

## Introduction

Plaintiff Madison Cawthorn's ("**Rep. Cawthorn**") candidacy for Congress has been challenged by voters with the North Carolina State Board of Elections ("**NCSBE**").[1] But North Carolina's Challenge Statute is unconstitutional and violates federal law in several respects. Rep. Cawthorn should not be subjected to the requirement to defend himself under such an unconstitutional statutory scheme.

## Argument

**I. This Court can properly exercise its jurisdiction[2] over this matter and over NCSBE.**

**A.      Rep. Cawthorn has Article III standing.**

**1.      Rep. Cawthorn has alleged an actual, particularized injury.**

Rep. Cawthorn is subject to the Challenge Statute. If successful, a Challenge to his candidacy would prevent him from running for Congress, which is quintessential First Amendment activity. *Washington v. Finlay*, 664 F.2d 913, 927-28 (4th Cir. 1981). His potential injury is not in any way hypothetical—not only is Rep. Cawthorn subject to the Challenge Statute, a Challenge was recently filed (although stayed) against him.

The NCSBE asserts that Rep. Cawthorn's "alleged injuries are entirely speculative at this early stage of litigation" because no panel has been appointed "to consider the underlying

---

[1] All Defendants are named in this suit in their official capacities. For the purposes of this Reply, "NCSBE" refers collectively to Defendants.

[2] NCSBE notes that "Plaintiff also failed to serve Defendants resulting in this Court lacking personal jurisdiction." (DE 45, n. 8). Defendants have been properly served via hand delivery of all the filings to the delivery lockbox at the NCSBE the day after filing. *See* Affidavit of Service (DE 13).

**Pl.'s Reply ISO**
**Prelim. Inj.**                                                1

matter." (DE 45 at 7). NCSBE argues Rep. Cawthorn "cannot show that he faces a substantial risk of harm because he cannot control or predict the actions of independent non-party actors in the chain of events necessary for his alleged injury to occur." *Id*. (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 413-14 (2009)). The NCSBE's assertions rest upon three questions: (1) whether the district Rep. Cawthorn has filed to run in will change; (2) whether the current Challengers will be eligible to continue their Challenge; and (3) whether other Challenges would follow redistricting. *See id.*

The Challengers are represented by counsel for Free Speech for People, a legal advocacy group dedicated to launching "innovative and groundbreaking legal actions" to further the organization's goals.[3] One of the types of legal actions Free Speech for People is pursuing is its "14Point3 Campaign," which "urge[s] Secretaries of State and chief election officials across the country to . . . bar insurrectionists from any future ballot."[4] Ron Fein, one of the counsel for the Challengers, recently appeared on CNN's Newroom. He stated, "we are definitely planning to file a series of these challenges. I don't want to talk about specific Members just yet, but Rep. Cawthorn is the first, but he will not be the last."[5] Mr. Fein continued, "the evidence that we've put forth is enough that unless Cawthorn wants to come and try and present his case, which he is certainly entitled to do, the State Board of Elections will be compelled to rule he is disqualified." *Id*. The Court may consider this potential hearsay evidence for purposes of the preliminary

---

[3] Free Speech for People Website, *About*, https://freespeechforpeople.org/about/

[4] Free Speech for People, The 14Point3 Campaign, https://freespeechforpeople.org/the-14point3-campaign/

[5] CNN Newsroom, Interview with Victor Blackwell and Alisyn Camerota, Jan. 14, 2022 starting at 2:44. https://www.youtube.com/watch?v=A6hzr8bijRg

**Pl.'s Reply ISO**
**Prelim. Inj.**                                              2

injunction motion. *See G.G. ex rel. Grimm v. Gloucester Cnty. Sch. Bd.*, 822 F.3d 709, 725–26 (4th Cir. 2016), cert. granted on other grounds, ––– U.S. ––––, 137 S.Ct. 369, 196 L.Ed.2d 283 (2016).

Rep. Cawthorn does in fact face "a substantial risk of harm" because a representative of the "independent non-party actors" confirmed that a Challenge against Rep. Cawthorn is part of a definite plan to challenge not only Rep. Cawthorn, but others as well. Electoral chaos is virtually assured by the Challengers' admitted plan, including *inter alia*, a potential disqualification after the primary election, necessitating an appointed candidate for the general, or a special election. *See* N.C.G.S. §§ 163-114(a); 163-13. The current deadline for filing candidacy in North Carolina is March 4th. The State's legislature recognized the fact that the districts are unlikely to be finalized prior to March 4th, and passed legislation extending this deadline. The Governor vetoed this legislation, ensuring that on March 5th, no candidate can file, which creates a substantial likelihood of the electoral chaos described.

### 2. Rep. Cawthorn's claims are ripe.

The Fourth Circuit applies a two-prong test to determine ripeness: "(1) whether the issues are fit for judicial decision and (2) whether hardship will fall to the petitioning party on withholding court consideration." *Charter Fed. Sav. Bank v. Off. of Thrift Supervision*, 976 F.2d 203, 208 (4th Cir. 1992), as amended (Nov. 2, 1992). The ripeness doctrine prevents courts from "entangling themselves in abstract disagreements over administrative policies." *Abbott Labs v. Gardner*, 387 U.S. 136 (1967), abrogated on other grounds by *Califano v. Sanders*, 430 U.S. 99 (1977).

**Pl.'s Reply ISO
Prelim. Inj.** 3

Here, Rep. Cawthorn's constitutional claims are fit for a judicial decision, and he would suffer hardship from this Court withholding its consideration. Rep. Cawthorn would have to mount a defense to the Challenge in front of a panel appointed by the NCSBE, appeal any negative panel decision to the NCSBE, and then file an appeal of the NCSBE decision in the North Carolina Court of Appeals before his constitutional claims to the Challenge Statute could even be considered. Rep. Cawthorn's constitutional claims are not "abstract disagreements over administrative policies." His claims cut to the core of several fundamental constitutional rights, and justice is served by this Court's consideration of those rights sooner, rather than later.

**B.     The *Younger* abstention doctrine does not apply.**

When state judicial proceedings have not commenced, *Younger* does not bar a federal court from action. *See Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 433 (1982). Likewise, when the state proceedings do not afford an adequate opportunity to raise the constitutional claims at issue, *Younger* does not apply. *Moore v. Sims*, 442 U.S. 415, 430 (1979). Here, *Younger* does not apply because there is no "ongoing state judicial proceeding," the congressional districts are in flux, pending appeal,[6] and the candidate challenges have been stayed. Furthermore the NCSBE has no authority to decide the constitutional issues before this Court.

The logical inconsistency of the NCSBE's reasoning is apparent here. On one hand, the NCSBE argues that Rep. Cawthorn does not have standing because he hasn't suffered an injury due to the question of whether a Challenge will actually come to fruition. (DE 45 at 6-8). But for

---

[6] Rep. Cawthorn verified that he will be filing his candidacy in the appropriate district, when the redrawn districts are approved.

**Pl.'s Reply ISO
Prelim. Inj.**                                            4

*Younger* purposes, the NCSBE argues that the state administrative proceedings are "ongoing," precluding this Court's consideration. (DE 45 at 12). Both propositions cannot be true, but even without that logical fallacy, the NCSBE's *Younger* argument fails under *Middlesex*.

In *Middlesex*, the "unique relationship between the New Jersey Supreme Court and the local Ethics Committee" led the Court to hold that there was adequate opportunity for the attorney to raise his constitutional claims to the Ethics Committee itself. 457 U.S. at 435 (finding Ethics Committees often interpreted state disciplinary rules, including considering questions of federal constitutional guarantees). Here, however, the NCSBE does not have the authority to determine the constitutionality of the Challenge Statute itself. An administrative agency "has no power to promulgate rules and regulations which alter or add to the law it was set up to administer or which have the effect of substantive law." *Hall v. Toreros, II, Inc.*, 176 N.C. App. 309, 318–19 (2006), aff'd, ordered not precedential, 363 N.C. 114 (2009) (internal citations omitted). Thus, the NCSBE has no power to hear or decide a constitutional challenge to the statute it is charged with enforcing. Such action would violate the prohibition against an agency "alter[ing] or add[ing] to the law it was set up to administer or which have the effect of substantive law." *Hall*, 176 N.C. App. at 318–19. If the NCSBE determined all, or a portion, of the Challenge Statute was unconstitutional, the statute it is set up to administer would be altered, by definition.

As discussed under the ripeness doctrine, Rep. Cawthorn does not have the ability to have his constitutional claims adjudicated until several steps (and corresponding negative impacts on his candidacy) have already occurred.

**Pl.'s Reply ISO Prelim. Inj.**         5

## II. Rep. Cawthorn is likely to succeed on the merits.

**A.     Rep. Cawthorn's First Amendment claim is likely to succeed.**

The NCSBE cites to non-binding precedent for its contention that Rep. Cawthorn's candidacy is not subject to First Amendment considerations unless that candidate alleges "by running for Congress he was advancing the political ideas of a particular set of voters." (DE 45 at 16) (citing *Newcomb v. Brennan*, 558 F.2d 825, 828 (7th Cir. 1977)). The *Newcomb* decision is contrary to this Circuit's finding that the right to run for office is directly protected by the First Amendment. *See Washington*, 664 F.2d at 927-28.

The NCSBE states that because Rep. Cawthorn will not be subject to disqualification "based upon reasonable suspicion alone," his First Amendment claim fails. (DE 45 at 17). The NCSBE attempts to distinguish the cases that hold such reasonable suspicion cannot serve as the basis for a violation of First Amendment rights. *See Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013); *see also Lowe v. Spears*, 258 F. App'x 568, 570 (4th Cir. 2007). The NCSBE argues that Rep. Cawthorn is not deprived of his rights by being subjected to a Challenge under the Challenge Statue. (DE 45 at 18). Under that same logic, the protestor arrested is not really deprived of his First Amendment rights because the arrest is just the first step in the adjudicatory process, and that protestor would have an opportunity to raise his constitutional concerns to the court hearing his case. But that's not what *Tobey* held—it held that the arrest itself (triggering all the other steps) was unconstitutional because it was only based upon reasonable suspicion. Likewise, the Challenge Statute allows a mere reasonable suspicion to trigger the Challenge process.

**Pl.'s Reply ISO
Prelim. Inj.**                                                          6

The NCSBE claims Rep. Cawthorn's "First Amendment claim is meritless because he argues that the State is violating the First Amendment by enforcing the Fourteenth Amendment." (DE 45 at 20) (citing *Travis v. Reno*, 163 F.3d 1000, 1007 (7th Cir. 1998) for the well-established doctrine that the Constitution cannot be "at war with itself"). The NCSBE states the doctrine correctly, but misapplies it here.

The NCSBE's misapplication of this doctrine is plain to see using a simple example pertaining to qualifications. The Constitution specifically requires Members of the House of Representatives to be 25 years old before taking office. U.S. Const. art. I, § 2, cl. 2. A 20 year-old candidate couldn't claim this clause was unconstitutional based upon his First Amendment right to run for Congress because that would be using one provision of the Constitution to render another provision unconstitutional: thus the Constitution would be at war with itself.

This is not the case here. Section Three of the Fourteenth Amendment is silent on the *process* that can be used to disqualify a candidate. Therefore, Rep. Cawthorn's First Amendment claim regarding the reasonable suspicion standard in the North Carolina Challenge Statute does not ask this Court to find that the First Amendment renders Section Three of the Fourteenth Amendment unconstitutional. It asks this Court to apply First Amendment constitutional jurisprudence to the *process* the North Carolina Challenge Statute uses when evaluating a Challenge. Such application would not lead to an invalidation of Section Three of the Fourteenth Amendment—if upheld, his claim would strike down a North Carolina state statute, the Challenged Statute. Thus, the war here is the North Carolina Challenged Statute's war on the First Amendment—a war it must lose.

**Pl.'s Reply ISO Prelim. Inj.**  7

**B.  Rep. Cawthorn's Due Process claim is likely to succeed.**

Rep. Cawthorn agrees that the Challenge Statute provides a process for defense, but he claims a critical part of that process—the burden shifting to the Candidate to prove he did not engage in insurrection or rebellion against the United States—is unconstitutional.

The NCSBE states that to "show entitlement to due process," Rep. Cawthorn must first show he possessed a "cognizable liberty or property interest." (DE 45 at 21). The cases NCSBE cites to for this proposition are not dispositive here. *Shirvinski v. U.S. Coast Guard* was a due process claim related to the termination of an at-will consulting agreement. 673 F.3d 308 (4th Cir. 2012). *Mathews v. Eldridge* involved a deprivation of social security disability benefits. *See* 424 U.S. 319 (1976). Neither case involved a constitutional right specifically protected by the First Amendment. However, applicable here is *Speiser v. Randall*, where the Court found that the statutorily provided burden shifting process violated the Fourteenth Amendment because "[w]hen the State undertakes to restrain unlawful advocacy it must provide procedures which are adequate to safeguard against infringement of constitutionally protected rights—rights which we value most highly and which are essential to the workings of a free society." 357 U.S. 513, 521 (1958). The Court held that the First Amendment rights at stake were so fundamentally important, the burden shifting provision (which required veterans to prove they didn't advocate for the overthrow of the government) violated the due process clause without analysis of whether a "liberty" interest in free speech was at stake. *Id.* at 517, n.3.

Likewise, the NCSBE's argument that burden-shifting schemes in civil cases only violate due process when "they are unreasonable, arbitrary, and thus in violation of due process" fails.

**Pl.'s Reply ISO
Prelim. Inj.**                                                8

(DE 45 at 24) (citing *Western & Atlantic. R.R. v. Henderson*, 279 U.S. 639, 642 (1929). The right at stake in *Henderson* was not a First Amendment right, but instead involved a burden shifting framework in a negligence action.

*Speiser* is squarely on point here—when First Amendment rights are involved, a burden shifting framework which requires someone to prove a negative, is unconstitutional.

C.  **Rep. Cawthorn's claim based upon Article 1, § 5 of the U.S. Constitution is likely to succeed.**

The NCSBE argues that the State's determination of a candidate's qualifications does not implicate the Constitution's mandate that only the U.S. House of Representatives can determine the qualifications of its Members because a Candidate is not a Member. (DE 45 at 25-27). But a State cannot add qualifications. *See U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779 (1995). If someone is elected to U.S. Senate at the age of 29, but turns 30 prior to being sworn in, she is not disqualified. Derek Muller, "Adding qualifications for congressional candidates and a Section 3 puzzle," Election Law Blog, February 7, 2022. If a state disqualifies that Candidate based on age, it would have impermissibly added a qualification to her candidacy (i.e., requiring her to be 30 years old when declaring his candidacy vs. before attaining that age before being sworn in). *Id.*

A Challenge based upon Section Three of the Fourteenth Amendment uniquely implicates the House's role in determining qualifications of its Members. Section Three allows Congress to remove the political disability by a two-thirds vote of each House. U.S. Const. Amend. XIV, § 3 Assuming NCSBE's argument that the disability was not removed by the Amnesty Act of 1872 is accurate,[7] Congress could, at any time between now and election day, remove the disability for

---

[7] The NCSBE's asserts the Amnesty Act of 1872 "narrowly permitted former Confederates

anyone allegedly implicated in the events of January 6, 2020. *Id*. "Put differently, a state like North Carolina can't condition ballot access on whether, as of today, you've engaged insurrection, because it would add a qualification." *Id*.

### III. The considerations of irreparable harm, balance of equities, and public interest favor Rep. Cawthorn.

The NCSBE asserts that Rep. Cawthorn will not suffer irreparable harm because he will have the ability to present a defense to a Challenge. (DE 45 at 28-29) That's not the point. Rep. Cawthorn should not be subject to a constitutionally infirm statute. (DE 9 at 24-25). Requiring him to defend himself based upon a process which violates his First and Fourteenth Amendment rights, is an irreparable harm in and of itself. *Id*. Likewise, the balance of equities and the public interest is always best served by not permitting the government to violate constitutional rights in the first instance. *Id*.

## Conclusion

For the foregoing reasons, Rep. Cawthorn respectfully requests that his motion for a preliminary injunction be granted.

---

to engage in public civic life during reconstruction." (DE 45 at 27). This interpretation conflicts with the plain language of the statute, which eliminated the political disability from any Members of Congress, except for those who served during the years 1859-63. *See* (DE 9 at 21-24).

**Pl.'s Reply ISO Prelim. Inj.** 10

Dated: February 11, 2022

/s/ Josh Howard
Gammon, Howard & Zeszotarski, PLLC
The Water Tower Building
115 ½ West Morgan Street
Raleigh, NC 27601
jhoward@ghz-law.com
Phone: (919) 521-5878
Fax: (919) 882-1898
State Bar No. 26902
*Local Civil Rule 83.1(d) Counsel for Plaintiff*

Respectfully submitted,

/s/ James Bopp, Jr.
James Bopp, Jr., Ind. Bar No. 2838-84*
*Lead Attorney for Plaintiff*
Melena S. Siebert, Ind. Bar No. 35061-15*
*Attorney for Plaintiff*
THE BOPP LAW FIRM
1 South 6th Street
Terre Haute, Indiana 47807
Telephone: (812) 232-2434
Facsimile: (812) 235-3685
jboppjr@aol.com
msiebert@bopplaw.com
*Attorneys for Plaintiff*
*Special Appearance Filed

**Pl.'s Reply ISO
Prelim. Inj.** 11

## Certificate of Compliance with Type-Volume Limit

I hereby certify that this document complies with the word limit of Local Civil Rule 7.2(f)(2)(3) because, excluding the parts of the document exempted by Local Civil Rule (f)(1), this document contains 2,798 words and does not exceed 10 pages. All word counts were generated by the word processing software used.


February 11, 2022 /s/ James Bopp, Jr.
James Bopp, Jr.
*Lead Counsel for Plaintiff*

**Pl.'s Reply ISO Prelim. Inj.** 12