UNITED STATES DISTRICT COURT
OF THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| **MADISON CAWTHORN**, an individual,<br><br>*Plaintiff*,<br><br>v.<br><br>**MR. DAMON CIRCOSTA**, in his official capacity as Chair of the North Carolina State Board of Elections, *et al.*<br><br>*Defendants*. | **Civ. No. 5:22-cv-00050-M** |

## Plaintiff's Response in Opposition to Motion to Intervene

Proposed-intervenors moved this Court to allow them to intervene in this action under Federal Rule of Civil Procedure 24. They are not entitled to intervene as a matter of right, and this Court should not grant them permission to intervene either.

Proposed-Intervenors are unable to satisfy their substantial burden to prove that they are entitled to intervene as a matter of right. Further, since proposed-intervenors cannot show that their intervention will more easily facilitate this action, and in fact will further complicate it, they should not be given permission to intervene.

Because proposed-intervenors do not provide anything new or different to this action, other than disagreement in reasonable litigation tactics, this Court should deny the Motion to Intervene.

**Statement of Facts**

Rep. Cawthorn currently serves as a Member of the U.S. House of Representatives, for North Carolina's 11th congressional district. Rep. Cawthorn filed his candidacy, for the upcoming midterm elections, for North Carolina's 13th congressional district on December 7, 2021. *See* (DE 2-2).

On January 10, 2022, several Challengers filed a Challenge against Rep. Cawthorn. (DE 2-3). The Cawthorn Challenge stated that Rep. Cawthorn "does not meet the federal constitutional requirements for a Member of the U.S. House of Representatives and is therefore ineligible to be a candidate for such office." *Id.* at ¶ 1. The Cawthorn Challenge was based upon claims that Rep. Cawthorn engaged in "insurrection or rebellion" against the United States and was ineligible to run for Congress under Section Three of the Fourteenth Amendment to the U.S. Constitution. U.S. Const. Amend. XIV, § 3. Rep. Cawthorn vigorously denies he engaged in "insurrection or rebellion" against the United States, but this litigation is not based on Rep. Cawthorn's factual defenses. Instead, this matter is before this court based upon various constitutional challenge to the North Carolina Statute itself.

On January 11, 2022, the North Carolina Superior Court in Wake County issued a stay on all challenges filed with the NCSBE until a "final resolution" is reached on the ongoing litigation challenging North Carolina's recently-redistricted congressional districts. Stay Order, Ex. C. The congressional districts, as drawn by the North Carolina legislature have been upheld, but the Supreme Court of North Carolina heard, overruled, and ordered new districts to be drawn. *See Harper v. Hall*, No. 413PA21, 2022 WL 343025 (Feb. 4, 2022). Rep. Cawthorn intends to run in

the midterm elections in an appropriate congressional district for North Carolina, after the congressional map question is resolved (by either continuing his candidacy as filed or re-filling in a different district). (DE 1 at ¶ 48).

Rep. Cawthorn then filled this action for declaratory and injunctive relief challenging North Carolina's challenge statute on January 31, 2022. *Id.* at ¶¶ 1-2. Since the commencement of this action, Rep. Cawthorn has filled a motion for preliminary injunction, motion to consolidate, and a motion to expedite. The Court granted the motion to expedite, ordering NCSBE to file a response to the two pending motions by February 7 and for Rep. Cawthorn to reply on February 11. (DE 18).

Now that briefing has completed (and with a potential consolidation with the merits), proposed-intervenors seek to intervene in this matter. Proposed-Intervenors are people who filled the candidacy challenge of Rep. Cawthorn. (DE 27 at 2). They seek intervention as a matter of right and in the alternative permissive intervention. *Id.* Proposed-intervenors are unable to satisfy their burden to prove intervention as a matter of right, and cannot justify permissive intervention either.

## Argument

Under Federal Rule of Civil Procedure 24, a movant can intervene through two different avenues—as a right or permissively. Fed. R. Civ. P. 24. In order to intervene as a matter of right, proposed-intervenors must satisfy *all* of the following four requirements: (1) the motion to intervene must be timely; (2) the movant must have an interest in the subject matter of the underlying action; (3) disposing of the action may impair or impede the movant's ability to

protect its interest, and (4) the applicant's interest is not adequately represented by the existing parties to the litigation. Fed. R. Civ. P. 24(a).

If intervention of right is not allowed, a court may grant permissive intervention, but the court must consider any delay or prejudice to the original party's rights. *Stuart v. Huff,* 706 F.3d 345, 349 (4th Cir. 2013). Both types of intervention are reviewed for abuse of discretion. *Id.* This deferential review is proper since "whe[re] the judge noted the Attorney General's detailed, thorough, and substantial brief . . . in opposition to the preliminary injunction," it was not an abuse of discretion to deny the motion to intervene. *Id.* at 350.

Because proposed-intervenors are unable to satisfy all their requirements, they are not entitled to intervention of a right. Further, since allowing proposed-intervenors would further complicate, delay, and prejudice Rep. Cawthorn, they should not be allowed to permissively intervene.

## I. Proposed-Intervenors are not entitled to intervention as of right.

A.  **The NCSBE and Attorney General are more than adequate representatives of Proposed Intervenor's interest.**

"[W]here a proposed intervenor's ultimate objective is the same as the existing party, the party's representation is *presumptively* adequate." *Id.* (emphasis added). This presumption is rebuttable "*only* by a showing of adverse interests, collusion, or nonfeasance." *Id.* (emphasis added). Further, where the party who shares the intervenor's objective is a government agency, the intervenor has the burden of making a substantial showing of inadequacy. *See id.* at 350-51. As the Fourth Circuit has articulated, a strong public policy exists for this requirement of a substantial showing.

**Pl.'s Resp. to
Mot. to Intervene**                                             4

Firstly, the most elementary functions of government is to serve in a representative capacity. *Id.* at 351. As such, in matters of public law litigation, "it is the government's basic duty to represent the public interest." *Id.* "[T]he need for government to exercise its representative function is perhaps at its apex where, *as here*, a duly enacted statute faces a constitutional challenge." *Id.* (emphasis added). In such cases, the government is simply the most natural party—it is difficult to conceive of an entity better situated to defend "the fruits of the democratic process." *Id.* "[B]ecause the State alone is entitle to create a legal code, only the State has the kind of direct stake needed to defend the standards embodied in that code against a constitutional attack." *Id.* (quoting *Diamond v. Charles*, 476 U.S. 54, 65 (1986)).

In *Stuart*, plaintiffs challenged the constitutionality of North Carolina "Woman's Right to Know Act," by suing (among others) the President of the North Carolina Medical Board ( a government agency). *Id.* 345-347. Defendants in the suit were represented by the North Carolina Attorney General. *Id.* at 348. Appellants in the matter were a group of pro-life doctors seeking to intervene in the case. *Id.* The district court held that since proposed-intervenors and defendant share "precisely the same goal: to uphold the Act as constitutionally permissible," there was a presumption of adequate representation. *Id.* at 349. Further, because the existing defendant was a government agency, there was a requirement of "a very strong showing of inadequacy." *Id.* The Fourth Circuit affirmed the decision, finding that to require anything less then a substantial showing of inadequacy, "would place a severe and unnecessary burden on government agencies as they seek to fulfill their basic duty of representing the people in matters of public litigation." *Id.* at 352.

**Pl.'s Resp. to
Mot. to Intervene**                                          5

*Stuart* is directly on point for the present matter. The present defendants are members of the NCSBE—a government agency—and seek to uphold the constitutionality of the statute in question in this lawsuit. Proposed-intervenors are a group of private individuals also seeking to uphold the constitutionality of the statue. Because both the defendants and proposed-intervenors seek the same thing, there is a presumption of adequate representation. *Id.* at 350. And since Defendants are named in their official capacities as members of a government agency, proposed-intervenors must make a substantial showing of inadequacy. *Id.* This can *only* be done by a showing of adverse interest, collusion, or nonfeasance. *Id.* Proposed-intervenors are unable to make this substantial showing of inadequacy.

In fact, proposed-intervenors do not cite the correct standard. They instead cite two, non-controlling district court opinions decided before *Stuart*, were the court found that the interests of the intervenors did not align with the government agency in the case. (DE 28 at 8). *See Defenders of Wildlife v. N.C. Dep't of Transp.*, 281 F.R.D. 264, 269 (N.D.N.C. 2012) (finding defendants' interest and intervenors' rights do not directly align); *See also American Pertoleum Inst. v. Cooper*, 2009 WL 10688053 at *3 (E.D.N.C. Feb. 27, 2009) (finding intervenors' interest do not align with Defendant's). Further, neither of the two cited cases involved challenges to the constitutionality of state statutes. *See Defenders of Wildlife*, 281 F.R.D. at 266; *see also Pertroleum Inst.*, 2009 WL 10688053 at *1.

Proposed-intervenors only contention of adverse interest is that "[Rep. Cawthorn] and [proposed-intervenors] have different views about the constitutionality, interpretation, and application of the North Carolina candidacy challenge statute. The Defendant's interests and

**Pl.'s Resp. to
Mot. to Intervene** 6

interpretation of those statues *also may* not be aligned with those of Defendant-intervenors." (DE 28 at 8). (emphasis added). So, proposed-intervenors whole contention for an adverse interest between them and Defendants is that their own views are different from Rep. Cawthorn and because of that, the Defendants' views *also may* not be aligned. That is not only not a substantial showing of inadequacy (as required by *Stuart*), it's not a showing of any kind of inadequacy. Further, where a statute faces a constitutional challenge, as here, the government is not only the most natural party, they are the *best* party as "only the State has the kind of direct stake needed to defend the standards embodied in that [statute] against a constitutional attack." *Stuart*, 706 F.3d at 351. (quoting *Diamond v. Charles* 476 U.S. at 65).

The Attorney General's response to Rep. Cawthorn's Motion for Preliminary Injunction and Proposed-Intervenors proposed response are so similar that their defenses are derivative of each other. Further, any difference can be considered as "reasonable litigation tactics." *Stuart*, 706 F.3d at 352. Both responses cite to a balancing test for violations of First Amendment rights to ballot access. *Compare* (DE 45 at 18) with (DE 27-1 at 11). Similarly, both claim there was no violation of procedural due process. *Compare* (DE 45 at 21-25) with (DE 27-1 at 15-19). Further, they both claim that North Carolina is entitled to determine the qualifications of candidates for Congress. *Compare* (DE 45 at 25) with (DE 27-1 at 19). Finally, both claim that the Amnesty Act of 1872 does not apply to Rep. Cawthorn. *Compare* (DE 45 at 27) with (DE 27-1 at 24).

"[Where] the proposed intervenors [] disagreed with the defendants tactical decisions, such [] disagreement does not amount to the necessary showing of adversity of interest,

**Pl.'s Resp. to**
**Mot. to Intervene**                                7

collusion, or nonfeasance that would rebut the presumption of adequacy." *Stuart*, 706 F.3d at 349. Here, both the proposed-intervenors' brief is substantially similar to Defendants'. Any difference or disagreement that proposed-intervenors have, only amounts to a difference of litigation tactics. Such a difference does not amount to the substantial showing of adversity of interest, collusion, or nonfeasance required to rebut the presumption of adequacy.

Because Proposed Intervenors are unable to rebut the presumption of adequacy of representation they are not entitled to intervene as a matter of right.

**B.      Proposed-Intervenors intervention would prejudice the Parties**

While Proposed-Intervenors motion to intervene can be considered timely, their intervention would prejudice the parties. "The most important consideration is whether [intervention] would prejudice the parties." *Spring Const. Co., Inc. v. Harris*, 614 F.2d 374, 377 (4th Cir. 1980).

In granting the motion to expedite, this Court understood the need for a quick and timely resolution of this case (whether it be just the preliminary injunction or by a consolidation with the trial of the merits). "For good cause shown, the motion is granted." (DE 18 at 1). That Order required the parties to complete all briefing by February 11, 2022, with a hearing to follow shortly, if necessary. *Id.* Allowing proposed-intervenors to intervene as of right and file their own response would mean that their response would be untimely, under this Court's Order. This would both delay and prejudice the parties.

If proposed-intervenors' motion is granted, their response would be filed after Rep. Cawthorn had already complied with the Order by filing his reply in support of his motion for

**Pl.'s Resp. to
Mot. to Intervene**                                          8

preliminary injunction. This would prejudice Rep. Cawthorn by not giving him an opportunity to reply in support of his motion after proposed-intervenors' response is filed. In the alternative, granting the proposed-intervenors' motion would delay the proceeding and thus disregard the spirit of the Court's Order granting the motion to expedite. This would prejudice Defendants since it gives Rep. Cawthorn the ability and time, he would otherwise not have, to refine and rework his arguments to Defendants' response as well (given the similarity between the two briefs).

While proposed-intervenors' motion is timely, their intervention would prejudice and delay the proceeding.

**C.     Disposing of the matter will not impair or impede Proposed-intervenors' interest..**

Proposed-intervenors interest in this matter arises entirely from their Challenge to Rep. Cawthorn's candidacy.

Under the Challenged Statute, in order to Challenge the candidacy of the Candidate, the Challenger must be a voter registered in the same district as that Candidate. N.C.G.S. §§ 163-127.1, 127.2(b). Proposed-intervenors do not allege or assert that they are registered in Rep. Cawthorn's district. *See* (DE 27, DE 28). That alone means that they have no interest in the outcome of this action. Assuming for arguments sake that they do, then the outcome of redistricting would affect their interest in the Challenged Statute more than the outcome of this case.

### II. Proposed-Intervenors should not be granted permission to intervene.

While a district court *may* permit intervention when the applicant has a claim or defense

**Pl.'s Resp. to
Mot. to Intervene**                                      9

that shares with the main action a common question of law or fact, the court must consider whether the intervention will unduly delay or prejudice the adjudication. *Stuart,* 706 F.3d at 355. In *Stuart*, the 4th Circuit affirmed a ruling that adding groups of intervenors would necessarily complicate the adjudication and "consume additional resources of the court and the parties." *Id.* Because of this necessary complication, "permitting intervention would likely result in undue delay in adjudication of the merits, without a *corresponding benefit* to existing litigants, the courts, or the process because the existing defendants are zealously pursuing the *same ultimate objective*." *Id.* (emphasis added). For the same reason, the proposed-intervenors here should not be permitted to intervene.

The existing Defendants are zealously pursuing the same ultimate objective as the proposed-intervenors. Further, they more than adequately represent the interests of the proposed-intervenors. Because of that, the proposed-intervenors offer no benefit to the existing parties, court, or adjudication. In fact, the opposite would occur. Permitted intervention would result in undue delay or prejudice to the adjudication. It would delay the briefing and decision on the preliminary injunction (and potentially, the merits), which this Court expedited for good cause. It would also complicate the matter and consume unnecessary resources by adding intervenors, when the existing Defendants are already "the best party possible to defend the statute."

For these reasons, the Court should deny proposed-intervenors motion to intervene.

**III. Proposed-Intervenors do not comply with Federal Rule of Civil Procedure 24.**

Fed. R. Civ. P. 24(c) requires that a motion to intervene *must* be accompanied by a pleading that sets out the claim or defense for which intervention is sought. This failure to

**Pl.'s Resp. to
Mot. to Intervene** 10

comply with the requirements of that rule will be disregarded only if "[t]he petition and *accompanying affidavit* filled by [proposed-intervenors] set forth sufficient facts and allegations to apprise [the parties] of [their] claims." *Spring Const. Co., Inc. v. Harris*, 614 F.2d 374, 377 (4th Cir. 1980) (emphasis added).

Rule 24(c) requires that the proposed-intervenors file an answer with their motion to intervene. Fed. R. Civ. P. 24(c) (requiring that the "motion *must* . . . be accompanied by a pleading that sets out the claim or defense for which intervention is sought.") (emphasis added). The Circuits are split on the remedy for failure to comply with the plain language of Rule 24(c). *See Providence Baptist Church v. Hillsdale Committee, Ltd.,* 425 F.3d 309, 313 (6th Cir. 2005). Some circuits are fairly lenient in their approach. *See Farina v. Mission Inv. Trust,* 615 F.2d 1068, 1074 (5th Cir. 1980) ("No technical forms of pleadings or motions are required"); *see also Providence Baptist Church* 425 F.3d at 314-15 (finding that a more permissive approach preferable). While other circuits favor dismissal for failure to comply. *See Public Service Co. of New Hampshire v. Patch* 136 F.3d 197, 205, n.6 (1st Cir. 1998) (failure to accompany motion to intervene with a pleading setting forth a claim or defense "ordinarily would warrant dismissal" of the motion); *Abramson v. Pennwood Inv. Corp.*, 392 F.2d 759, 761 (2nd Cir. 1968) ("appellant's reference in his motion papers ot the allegations of the original complaint was insufficient to comply with the requirements of Rule 24(c)"); *Shevlin v. Schewe*, 809 F.2d 447, 450 (7th Cir. 1987) (Fed.R.Civ.Pro. 24(c) "is unambiguous in defining the procedure for an intervenor" and requires a pleading to accompany the motion to intervene).

The Fourth Circuit splits the difference by forgiving failure to comply by disregarding

**Pl.'s Resp. to
Mot. to Intervene**                                11

only non-prejudicial defects. *Spring Const. Co.* 614 F.2d at 377. So, the Fourth Circuit will permit a petition and accompanying affidavit setting forth sufficient facts and allegations to apprise the parties of their claims and defenses. *Id.* But Proposed-intervenors have failed to comply with even this Circuit's moderately lenient standard. The only thing that they have attached is an exhibit with purports to be their response in opposition to Rep. Cawthorn's motion for preliminary injunction. They do not include any facts, alleges, or affidavits sufficient to show their claims or defenses. Specifically, they do not show that they are the ones who filled the candidacy challenge, nor do they state that they were entitled to challenge Rep. Cawthorn's challenge.

Because, proposed-intervenors did not comply with the requirements of Fed. R. Civ. P. 24, their motion to intervene should be denied.

## Conclusion

Because proposed-intervenors are unable to meet their burden of a substantial showing of inadequate representation**,** they are not allowed to intervene as a right. Since proposed-intervenors would unnecessarily complicate, delay, and prejudice the adjudication, while not adding any corresponding benefit, they should not be permitted to intervene. Further, because they do not comply with Rule 24, their motion to intervene should be denied.

For all the foregoing reasons, this Court should deny proposed-intervenors motion to intervene.

| | |
|---|---|
| Dated: February 11, 2022 | /s/ James Bopp, Jr. |
| | James Bopp, Jr., Ind. Bar No. 2838-84* |
| Respectfully Submitted, | Melena S. Siebert, Ind. Bar No. 35061-15* |
| | THE BOPP LAW FIRM |
| /s/ Josh Howard | 1 South 6th Street |
| Gammon, Howard & Zeszotarski, PLLC | Terre Haute, Indiana 47807 |
| The Water Tower Building | Telephone: (812) 232-2434 |
| 115 ½ West Morgan Street | Facsimile: (812) 235-3685 |
| Raleigh, NC 27601 | jboppjr@aol.com |
| jhoward@ghz-law.com | msiebert@bopplaw.com |
| Phone: (919) 521-5878 | *Attorneys for Plaintiff* |
| Fax: (919) 882-1898 | *Special Appearance Filed |
| State Bar No. 26902 | |
| *Local Civil Rule 83.1(d) Counsel for Plaintiff* | |

**Certificate of Compliance with Type-Volume Limit**

I hereby certify that this document complies with the word limit of Local Civil Rule (f)(2)(3) because, excluding the parts of the document exempted by Local Civil Rule (f)(1), this document contains 3,110 words and does not exceed 30 pages. All word counts were generated by the word processing software used.

February 11, 2022

/s/ James Bopp, Jr.
James Bopp, Jr.
*Lead Counsel for Plaintiff*