UNITED STATES DISTRICT COURT
OF THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-cv-00050-M

MADISON CAWTHORN, an individual,

*Plaintiff,*

v.

MR. DAMON CIRCOSTA, in his official capacity as Chair of the North Carolina State Board of Elections, MS. STELLA ANDERSON, in her official capacity as a member of the North Carolina State Board of Elections, MR. JEFF CARMON, in his official capacity as a member of the North Carolina State Board of Elections, MR. STACY EGGERS IV, in his official capacity as a member of the North Carolina State Board of Elections, MR. TOMMY TUCKER, in his official capacity as a member of the North Carolina State Board of Elections, MS. KAREN BRINSON BELL, in her official capacity as the Executive Director of the North Carolina State Board of Elections,

*Defendants, and*

BARBARA LYNN AMALFI, LAUREL ASHTON, NATALIE BARNES, CLAUDE BOISSON, MARY DEGREE, CAROL ANN HOARD, JUNE HOBBS, MARIE JACKSON, MICHAEL JACKSON, ANNE ROBINSON, DAVID ROBINSON, CAROL ROSE, and JAMES J. WALSH,

*Proposed Defendant-Intervenors.*

**PROPOSED DEFENDANT-INTERVENORS'
REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO INTERVENE AS
DEFENDANTS**

This case would not exist were it not for the action of the Proposed Defendant-Intervenors

(the "Challengers") in instituting the statutory challenge against Cawthorn in the first place. Cawthorn admits that his suit would not be a case and controversy without Challengers' action. (Dkt. 51 at 3.) The Challengers are discussed repeatedly throughout Cawthorn's own filings, including his Complaint and his Motion for Preliminary Injunction. Indeed, Cawthorn has assumed that the Challengers are proposing a position "here" (*i.e.*, within the confines of this litigation). (Dkt. 9 at 26.) Yet Cawthorn inexplicably seeks to exclude the Challengers from this litigation.

The Challengers should be allowed to intervene. Their interests in this litigation are plain from Cawthorn's pleadings. The North Carolina State Board of Elections ("NCSBE") is not an adequate representative where the NCSBE's role in the underlying proceeding is merely adjudicative, and the Challengers are provided by statute with an independent role in that proceeding. Last, Cawthorn will suffer no prejudice from an intervention by the Challengers, as the Challengers have made a timely motion and provided the Court with all the materials it needs to consider both the Challengers' right to intervene and their position on the merits of Cawthorn's motion for a preliminary injunction.

Allowing intervention by the Challengers is appropriate both as a matter of the Challengers' right to intervene and as a matter of permissive intervention.

### I. THE CHALLENGERS ARE DULY AUTHORIZED UNDER NORTH CAROLINA LAW TO INITIATE THE CHALLENGE.

Cawthorn, in his Opposition (Dkt. 53 at 9) and in support of the proposition that the Challengers "have no interest in the outcome of this action," wrongly contends that the Challengers "do not allege or assert that they are registered in Rep. Cawthorn's district." (*Id*.) That claim is wrong as Cawthorn should well know inasmuch as the Challenge at issue – which he attached as an exhibit to his preliminary injunction motion (Dkt. 2-3), states in its very first sentence that the

2

Challengers are "registered voters in the 13th Congressional District" in which Cawthorn filed to run. (*Id*. at 1.)

To the extent that Cawthorn is contending that the Challengers lack standing because the maps pursuant to which Cawthorn originally filed have now been held unconstitutional, his argument proves too much. Just as the Challengers' interest arises entirely from the Challenge, Cawthorn's asserted threat of harm arises entirely from the Challenge. If the Court accepts Cawthorn's contention, that conclusion inexorably leads to the further conclusion that Cawthorn faces no viable challenge and therefore suffers no threat of irreparable harm.

If the Court accepts that it is enough for Cawthorn to state that will be a candidate in some hypothetical future district as conferring standing upon him, then Challengers have standing based on the fact that they will be voters in a future district to be drawn.

## II. THE INTERESTS OF THE CHALLENGERS ARE NOT ADEQUATELY REPRESENTED BY THE NCSBE.

Where a statute imposes upon a government official a duty to serve "two distinct interests," the government and would-be intervenors' differing "objectives" from the start are sufficient to demonstrate inadequate representation under Rule 24(a)(2), even though the issue may involve a constitutional challenge to a statute. *Stuart v. Huff*, 706 F.3d 345, 352 (4th Cir. 2013) (quoting *Trbovich v. United Mine Workers of Am.,* 404 U.S. 528 (1972)).

In *Trbovich* the Secretary of Labor instituted an action pursuant to the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA) to set aside an election of certain union officers following a complaint initiated by a union-member who sought to intervene in the action. Under the federal statute, a union member could initiate a complaint with the Secretary of Labor to investigate and then bring a cause of action in federal court if there was probable cause. Under this statutory scheme the Secretary of Labor held "two distinct interests" that were "related, but

3

not identical." *Trbovich v. United Mine Workers of Am.,* 404 U.S. 528, 538 (1972). One interest was to act as the union member's "lawyer" for purposes of enforcing the member's rights, and the other was to protect the "vital public interest in assuring free and democratic union elections that transcends the narrower interest of the complaining union member." *Id.* at 539 (internal citations omitted). As summarized by the *Stuart* court, "the Secretary of Labor was compelled by statute to 'serve two distinct interests,' such that the Secretary's ultimate objective was not the same as that of the proposed intervenor to begin with." *Stuart v. Huff*, 706 F.3d 345, 352 (4th Cir. 2013) (quoting *Trbovich*, 404 U.S. at 538).

The *Stuart* court (relied on by Cawthorn in his Opposition Motion, p. 4-8) distinguished *Trbovich* in denying intervention to pro-life individuals who shared the same "objectives" as the State in sustaining the constitutionality of an abortion statute. The distinguishing factor for the *Stuart* court was not whether the claims involved a "constitutional" challenge to a statute, but whether the would-be intervenor and the state have "divergent objectives." In such circumstances, it is "perfectly sensible" to require only a "modest showing of inadequacy" before granting intervention. *Stuart,* 706 F.3d at 352. Cawthorn makes no attempt whatsoever to argue that the NCSBE is more akin to the agency involved in *Stuart* than the agency involved in *Trbovich* and does not even identify *Trbovich* as the controlling Supreme Court precedent.

Here, as in *Trbovich*, the NCSBE has dual roles under the Challenge Statute to protect the integrity of elections in the interest of the general public, and to administer and adjudicate challenges from voters. Also as in *Trbovich*, the Challengers seeking intervention in this case initiated the complaint against Cawthorn before the NCSBE. Therefore, the Challengers' ultimate objective is to persuade the NCSBE that Cawthorn is disqualified, while the objectives of the NCSBE are different, namely to administer the challenge process and ultimately adjudicate it as

4

necessary. From the beginning, the objectives of the State and the Challengers are not the same. Under *Trbovich* and *Stuart,* that is sufficient to satisfy the requirements of Intervention by Right under Rule 24(a)(2).

Finally, the intervenors in *Stuart* had other remedies available to them, such as filing a separate action. That is not the case here, where Cawthorn's proposed relief would effectively enjoin Challengers from pursuing all remedies available to them under the statutory challenge process. Challengers' interests in this case are therefore significantly greater than the interests of the proposed-intervenors in *Stuart.*

### III. THE CHALLENGERS' INTERVENTION WAS TIMELY AND WILL NOT PREJUDICE CAWTHORN.

At multiple points throughout his opposition, Cawthorn claims that he will suffer prejudice if Challengers are allowed to intervene. (Dkt. 53 at 8 (arguing that Challengers' Motion, while timely, is nonetheless prejudicial); 9 (arguing that permissive intervention would prejudice Cawthorn); 12 (arguing that the failure to include an answer with the Motion is not a non-prejudicial defect).) Each of these arguments is meritless.

First, Cawthorn's prejudice argument is irrelevant to the intervention as-of-right analysis where Cawthorn has admitted that the Challengers' Motion is timely. Second, Cawthorn will not suffer any prejudice (or delay) as a result of Challengers' intervention; and to the extent he does, it is because of his own litigation tactics. Third, Cawthorn's perceived prejudice is an inadequate ground for denying permissive intervention when a refusal by the Court to allow Challengers to intervene would be enormously prejudicial to Challengers. And fourth, the fact that the Motion did not include a formal "pleading" is non-prejudicial (and therefore irrelevant to the Court's analysis) where a pleading by the Challengers setting forth their interests has been part of the record in this case since its inception and before Challengers' Motion was even filed.

5

### A. Cawthorn's Perceived Prejudice Is Irrelevant to the Intervention-of-Right Analysis Because Cawthorn Has Admitted that Challengers' Motion Was Timely.

In relying so heavily on his prejudice arguments, Cawthorn neglects the critical fact that, for purpose of Challengers' request to intervene as of right, "prejudice" is only a sub-factor of the "timeliness" element of an intervention motion. *See Houston General Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999) (listing timeliness, but not prejudice, as an element of an intervention motion). Cawthorn has admitted that the "motion to intervene can be considered timely." (Dkt. 53 at 8.) There is no need for the Court to look further into any "prejudice" sub-factor.

If the Court does consider Cawthorn's arguments of "prejudice," the Court must consider this sub-factor alongside other timeliness considerations like "the point to which the suit has progressed" and the time when the proposed intervenor "knew or should have known" of the suit. *See N.A.A.C.P. v. New York*, 413 U.S. 345, 366 (1973). Here the Challengers filed their motion within one week of Cawthorn's filing, and before the named defendant had an opportunity to do anything more than file a notice of appearance. The timeliness of Challengers' motion far overshadows any perceived prejudice to Cawthorn.

### B. There Is in Fact No Prejudice to Cawthorn; and to the Extent There Is any Delay, It Is of Cawthorn's Own Making.

As his purported "prejudice" Cawthorn argues that allowance of the Motion to Intervene would cause delay because "their response would be filed after Rep. Cawthorn had already complied with the [briefing] Order by filing his reply in support of his motion for preliminary injunction" and that he would thus not have "an opportunity to reply in support of his motion after proposed-intervenors' response is filed." (Dkt. 53 at 8-9.) This asserted prejudice is ludicrous. With their Motion to Intervene, the Challengers filed a proposed Memorandum in Opposition to the Motion for Preliminary Injunction. (Dkt. 27-1.) This proposed opposition memorandum was filed <u>before</u> the NCSBE filed its own opposition memorandum. (*See* Dkt. 45.) If Cawthorn had

6

wished to address arguments raised in the Challengers' proposed Memorandum, he was free to do so within the timeline established by his own proposed briefing schedule. Moreover, Cawthorn could have submitted an "omnibus reply" (and requested extra pages if necessary) to both the NCSBE opposition and the Challengers' opposition without suffering prejudice. Or Cawthorn could have requested that the Court grant him leave to file an out-of-time reply to address new issues raised by the Challengers. Cawthorn did neither; his claims of prejudice ring hollow when he had every opportunity to respond to the Challengers' arguments on the merits of the case.

If Cawthorn had truly wished to avoid any delay he could have named Challengers as defendants in his suit. Not only did he file documents written by the Challengers as part of his preliminary injunction motion (Dkt. 2-3), he even assumed that the Challengers were already appearing "here." (Dkt. 9 at 26 (attributing the position he was arguing against as a position "which Challengers propose here").) Yet Cawthorn did not name the Challengers as defendants. It is Cawthorn's own tactics that have resulted in the need for the Challengers' memorandum in opposition to the motion for preliminary injunction as a "proposed" filing, instead of as the filing of party-defendants.

### C. Cawthorn's Perceived Prejudice Is an Insufficient Ground for Opposing Permissive Intervention.

The only arguments Cawthorn raises in opposition to permissive intervention is a boilerplate recitation of language from the Fourth Circuit about factors courts consider when considering a motion for permissive intervention. (Dkt. 53 at 9-10 (collecting quotations from *Stuart*, 706 F.3d at 355).) Yet Cawthorn provides no substantive analysis of what sorts of complications, additional resources, or delay would result from the Court's allowance of permissive intervention. This is because – for the reasons set forth above – there is no prejudice or delay related to the Challengers' proposed intervention. The Challengers have not and will not

cause any delay of this case: they have not sought any extensions of time, and they did not take a position on either of Cawthorn's motions for expedited briefing or for consolidation of the preliminary injunction motion with the merits. And there is no indication that there will be discovery in this case—in fact, Cawthorn has relied on the assertion that "there is no need for additional information or discovery as all relevant information is already in the hand of the parties" in support of his motion to consolidate. (Dkt. 52 at 1.) The complexity of discovery was the key factor considered by the district court in *Stuart*[1] when it exercised discretion not to allow permissive intervention.

The purpose of the "prejudice" analysis to consideration of a permissive intervention motion is to prevent intervention from "hamper[ing] or vex[ing] the claims of the original parties." *See Commonwealth Edison Co. v. Allis-Chalmers Mfg. Co.*, 207 F.Supp. 252, 257 (N.D. Ill. 1962). It is ironic that Cawthorn relies on this analysis, since the entire goal of his suit is to hamper and delay the Challengers' ability to present their claims in a North Carolina tribunal.

Finally, Cawthorn fails to acknowledge the prejudice Challengers would face if their Motion were denied. If the Court denies the Motion and Cawthorn is somehow successful in his claims, then the Challengers would be deprived of the forum provided to them by North Carolina state law to exercise their rights as voters. Excluding the Challengers from this case would prejudice the Challengers far more than including the Challengers might prejudice Cawthorn.

**D. The Lack of an Answer Accompanying Challengers' Motion Is Non-Prejudicial.**

That Challengers' Motion did not contain a formal answer is not prejudicial. The docket of this case already contains – in a document filed by Cawthorn himself – a pleading by the

---

[1] Cawthorn selectively replaces the words "the discovery process" with "the adjudication" when he closely paraphrases the *Stuart* court's summary of reasons why permissive intervention should not be allowed.

8

Challengers. Namely, the Challenge that the Challengers filed with the NCSBE, which describes the Challengers' interests and position for over 30 pages. (Dkt. 2-3.) Likewise, all of the grounds for Challengers' intervention are apparent from Cawthorn's own papers, which repeatedly refer to the Challengers' claims.

As Cawthorn acknowledges, the leading Fourth Circuit case instructs courts to disregard "non-prejudicial" defects. (Dkt. 53 at 12 (citing *Spring Const. Co., Inc. v. Harris*, 614 F.2d 374, 377 (4th Cir. 1980)).) Likewise, the commentators note "[i]f the intervenor is content to stand on the pleading an existing party has filed, it is difficult to see what is accomplished by adding to the papers in the case a new pleading that is identical in its allegations with one that is already on file." 7C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1914 (3d ed. 2021).

Here, Cawthorn cannot claim to be prejudiced by the fact that Challengers have not yet filed an answer. After all, the NCSBE has not yet filed its answer, because no responsive pleading deadline has yet occurred. Cawthorn himself has suggested that the entirety of the case should be decided without a pleading by the NCSBE,[2] since he has vigorously argued that the briefing on the preliminary injunction motion should be used by the Court to reach a final judgment, without consideration of anything the NCSBE would file in its answer. (Dkt. 5; Dkt. 52.)

Any perceived failure by Challengers to file an answer is non-prejudicial.

## CONCLUSION

The Court should grant Defendant-Intervenors' motion to intervene as of right or, in the alternative, for permissive intervention.

---

[2] Pleadings are an unnecessary formality in this case, where Cawthorn has sought to limit the issues presented to questions of law, and he has specifically requested that this litigation not focus on questions of fact. (Compl. ¶ 45 ("this litigation is not based in Rep. Cawthorn's factual defenses").)

9

This the 17th day of February, 2022.

Respectfully submitted,

*/s/ Pressly M. Millen*
Pressly M. Millen (State Bar #16178)
Raymond M. Bennett (State Bar # 36341)
Scott D. Anderson (State Bar # 49044)
Hayes Jernigan Finley (State Bar # 47834)
Womble Bond Dickinson (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
Office: 919.755.2135
Fax: 919.755.6067
Email: Press.Millen@wbd-us.com
          Ray.Bennett@wbd-us.com
          Scott.D.Anderson@wbd-us.com
          Hayes.Finley@wbd-us.com

John R. Wallace (State Bar #7374)
Lauren T. Noyes (State Bar #28130)
Post Office Box 12065
Raleigh, NC 27605
Office: 919.782.9322
Fax: 919.782.8133
Email: jrwallace@wallacenordan.com
ltnoyes@wallacenordan.com

Robert F. Orr (State Bar #6798)
3434 Edwards Mill Road, Suite 112-372
Raleigh, NC 27612
Office: 919.608.5335
Email: orr@rforrlaw.com

Ronald Fein*
John C. Bonifaz*
Ben Clements*
Courtney Hostetler*
Benjamin Horton*
Free Speech For People
1320 Centre St. #405
Newton, MA 02459
Office: 617.244.0234
Email: rfein@freespeechforpeople.org

*Attorneys for Defendant-Intervenors Barbara Lynn Amalfi, Laurel Ashton, Natalie Barnes, Claude Boisson, Mary Degree, Carol Ann Hoard, June Hobbs, Marie Jackson, Michael Jackson, Anne Robinson, David Robinson, Carol Rose, and James J. Walsh*

\*Special appearances pursuant to L.R. 83.1

*Of Counsel*

James G. Exum, Jr. (State Bar #1392)
6 Gleneagle Ct.
Greensboro, NC 27408
Office: 336.554.1140
Email: jimxzoom@gmail.com

11

## CERTIFICATE OF WORD COUNT

I certify that this document complies with the applicable word limit provided in Local Rule 7.2(f)(3), and contains fewer than 2,800 words, excluding the parts of the document that are exempted by Rule 7.2(f)(3). This certificate was prepared in reliance on the word count feature of the word processing software used to prepare this document.

This the 17th day of February, 2022.

/s/ Pressly M. Millen
Pressly M. Millen