IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Case No. 5:22-cv-00050-M

| | |
|---|---|
| MADISON CAWTHORN, | ) |
| Plaintiff, | ) |
| v. | ) ORDER |
| DAMON CIRCOSTA, in his official capacity as Chair of the North Carolina State Board of Elections, STELLA ANDERSON, in her official capacity as a member of the North Carolina State Board of Elections, JEFF CARMON, in his official capacity as a member of the North Carolina State Board of Elections, STACY EGGERSIV, in his official capacity as a member of the North Carolina State Board of Elections, TOMMY TUCKER, in his official capacity as a member of the North Carolina State Board of Elections, KAREN BRINSON BELL, in her official capacity as the Executive Director of the North Carolina State Board of Elections, | ) |
| Defendants. | ) |

This matter comes before the court on the Motion to Intervene filed by a number of individuals who have challenged Plaintiff's candidacy for office in North Carolina's 13th congressional district pursuant to N.C. Gen. Stat. § 163-127.2 [DE 27].

Rule 24 of the Federal Rules of Civil Procedure provides two avenues for intervention—one mandatory and the other at the district court's discretion. *N. Carolina State Conf. of NAACP v. Berger*,

999 F.3d 915, 927 (4th Cir. 2021), *cert. granted sub nom. Berger v. N. Carolina State Conf. of the NAACP*, No. 21-248, 2021 WL 5498793 (U.S. Nov. 24, 2021).[1] The movants seek to intervene as a matter of right under Rule 24(a)(2) and, alternatively, with the court's permission under Rule 24(b). The court addresses each basis for intervention in turn.

I. Intervention as a Matter of Right

Rule 24(a)(2) provides for intervention as a matter of right if the would-be intervenors file a timely motion establishing "(1) an interest in the subject matter of the action; (2) that the protection of this interest would be impaired because of the action; and (3) that the applicant's interest is not adequately represented by existing parties to the litigation." *Berger*, 999 F.3d at 927 (quoting *Stuart v. Huff*, 706 F.3d 345, 349 (4th Cir. 2013)). Failure to establish any one requirement precludes intervention as a matter of right. *Berger*, 999 F.3d at 927 (citing *Virginia v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir. 1976)).

Here, the movants' demonstration of the third requirement must overcome a heightened presumption of adequate representation by the Defendants. First, a presumption of adequate representation attaches whenever "the party seeking intervention has the same ultimate objective as a party to the suit." *Berger*, 999 F.3d at 930. That shared objective distinguishes the default rule set by the Supreme Court in *Trbovich v. United Mine Workers* and implicates this more specific standard. *See Berger*, 999 F.3d at 931 (citing 404 U.S. 528, 538 n.10 (1972)) (noting support across the circuits for this distinction). Under this context-specific approach to Rule 24, the Fourth Circuit applies presumptions of adequacy to constitutional challenges to state statutes where existing defendants already

---

[1] The Supreme Court granted certiorari on three questions, none of which appear to be directly applicable to intervention by private parties like the movants. *See* Philip E. BERGER, et al., Petitioners, v. NORTH CAROLINA STATE CONFERENCE OF THE NAACP, et al., Respondents., 2021 WL 3741675 (U.S.) (presenting one question about the standard of review and two questions about intervention by state agents authorized by state law to represent the state's interests).

2

seek to uphold their validity. *See Berger*, 999 F.3d at 931 (addressing efforts by legislators to intervene where a voter identification law was being defended by the Attorney General and State Board of Elections); *Stuart*, 706 F.3d at 352 (addressing efforts by pro-life advocates to intervene where the Attorney General was defending a state statute regulating abortion providers). An existing party's distinct institutional interests do not defeat this presumption so long as they align with the ultimate goal of defending the statute. *See Berger*, 999 F.3d at 931–32 (rejecting arguments that the State Board of Elections' unique interest in election administration defeated the presumption of adequacy).

Second, a heightened presumption of adequacy applies when would-be intervenors share the same ultimate objectives as a government defendant. *Berger*, 999 F.3d at 932 (quoting *Stuart*, 706 F.3d at 351) (explaining why a "more exacting showing of inadequacy should be required" when a government actor already represents the interests). Government entities are uniquely well-positioned to defend duly enacted state statutes from constitutional challenges. *See Stuart*, 706 F.3d at 351 (describing the state as the "most natural party" to protect the public's interests). Moreover, permitting private persons to intervene on nominal showings would impair the government's ability to do so. *See Stuart*, 706 F.3d at 351 (cautioning that "the government could be compelled to modify its litigation strategy to suit the self-interested motivations of those who seek party status, or else suffer the consequences of a geometrically protracted, costly, and complicated litigation.").

Would-be intervenors can overcome this heightened presumption by showing "adversity of interest, collusion, or malfeasance—but not by mere 'disagreement over how to approach the conduct of the litigation' in question." *Berger*, 999 F.3d at 930 (quoting *Stuart*, 706 F.3d 353). Adversity does not arise any time would-be intervenors assert stronger, more specific interests. *See Stuart*, 706 F.3d at 353 (reasoning that those seeking party status "will nearly always have intense desires that are more particular than the state's"). Nor can courts infer adversity or nonfeasance from an existing party

3

pursuing the same objective using different litigation tactics or legal theories than those preferred by the would-be intervenors. *See Stuart*, 706 F.3d at 353–54 (rejecting assertions of adversity based on the Attorney General's reliance on legal—rather than factual arguments—and decision not to appeal a preliminary injunction).

In this case, the movants fail to overcome the strong presumption of adequate representation by Defendants. Undoubtedly, the movants and Defendants share the same ultimate objective in *this* case: to obtain a court order rejecting the Plaintiff's claims and upholding the constitutionality of the challenged statute. *See Stuart*, 706 F.3d at 349 (upholding the lower court's finding of a presumption "because the appellants and the existing defendants share 'precisely the same goal: to uphold the Act as constitutionally permissible.'"). Movants' arguments to the contrary conflate their challenge to Plaintiffs' qualifications before the State Board of Elections with this litigation. While the union member in *Trbovich* had a right to intervene in the enforcement suit adjudicating the merits of his complaint, 404 U.S. at 538–39, the movants here—like the would-be intervenors in *Stuart* and *Berger*—can only hope to mount their own defense of a challenged statute, *see* 999 F.3d at 931; 706 F.3d at 352. Moreover, like the legislative leaders in *Berger*, the movants do not show that the state Defendants' distinct institutional interests compromise their defense of this statute. *See* 999 F.3d at 932 (finding that other objectives related to elections administration did not defeat the presumption of adequate representation by the Board of Elections). Rather, the Board's interest in administering the challenge process, [DE 54 at 4], appears entirely consistent with defending its authority to hear such challenges. Indeed, the state Defendants are particularly well-positioned to defend the challenge statute, one they claim they have enforced several times. Resp., DE 45 at 5 ("In the fifteen years since the enactment of the candidate challenge statutes, the State Board has considered and ruled upon numerous challenges, typically in the form of appeals from the initial hearing panel. In the past four years alone, the State Board has decided 12 candidate

4

challenge appeals, involving all types of races, including candidates for the judiciary, state legislature, sheriffs, and county and municipal offices.").

Finally, the movants make no showing of "adversity of interest, collusion, or malfeasance"; instead, their proposed response to the motion for preliminary injunction demonstrates the movants' alignment with the Defendants' position in this case by also arguing that the court lacks jurisdiction based on the ripeness and abstention doctrines and that Plaintiff fails to demonstrate a likelihood of success on the merits of his First Amendment and Fourteenth Amendment claims, and the movants likewise contend that the Qualifications Clause does not conflict with the challenge statute and that the 1872 Amnesty Act applied at one time and not to future "insurrectionists." Compare Resp., DE 45 and Prop. Resp., DE 27-1. The court finds the movants have failed to demonstrate an inadequacy of Defendants' representation of their interests and, therefore, they have failed to establish intervention as of right.

II. Permissive Intervention

Rule 24(b)(1)(B) allows district courts to permit intervention by applicants whose claims or defenses share common questions of law or fact with the main action. That said, courts "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3); *see also Berger*, 999 F.3d at 939 (describing these as "the only" factors that must be weighed). When an existing defendant already seeks the same objective, courts can conclude that intervention would introduce unnecessary delays and complications "without a corresponding benefit to existing litigants, the court, or the process." *See Stuart*, 706 F.3d at 355 (affirming a denial of permissive intervention based on these findings). These factual conclusions about unnecessary complications and delay go directly to the district court's trial management prerogatives. *Berger*, 999 F.3d at 939.

5

Here, the movants and the Defendants' interests in seeking an order denying the motion for preliminary injunction are the same. The movants' response brief adds little to nothing to the court's consideration of the Plaintiff's request for preliminary injunctive relief. The court finds that the movants' proposed intervention to permit the court's consideration of their response not only is unnecessary, but also would delay this matter since the briefing on the motion by the parties is now complete.

The court concludes that, considering the parties in their current posture and recognizing that such posture could change, the motion to intervene is DENIED WITHOUT PREJUDICE.

SO ORDERED this 21st day of February, 2022.

Richard E Myers II
RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE