UNITED STATES DISTRICT COURT
OF THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-cv-00050-M

MADISON CAWTHORN, an individual,

*Plaintiff,*

v.

MR. DAMON CIRCOSTA, in his official capacity as Chair of the North Carolina State Board of Elections, MS. STELLA ANDERSON, in her official capacity as a member of the North Carolina State Board of Elections, MR. JEFF CARMON, in his official capacity as a member of the North Carolina State Board of Elections, MR. STACY EGGERS IV, in his official capacity as a member of the North Carolina State Board of Elections, MR. TOMMY TUCKER, in his official capacity as a member of the North Carolina State Board of Elections, MS. KAREN BRINSON BELL, in her official capacity as the Executive Director of the North Carolina State Board of Elections,

*Defendants,* and

LAUREL ASHTON, MICHAEL "MIKE" HAWKINS, MELINDA LOWRANCE, ELLEN BETH RICHARD, and TERRY LEE NEAL,

*Proposed Defendant-Intervenors.*

**LAUREL ASHTON, MICHAEL "MIKE" HAWKINS, MELINDA LOWRANCE, ELLEN BETH RICHARD, and TERRY LEE NEAL'S MEMORANDUM IN <u>SUPPORT OF EXPEDITED RENEWED MOTION TO INTERVENE AS DEFENDANTS</u>**

Proposed Defendant-Intervenors Laurel Ashton, Michael "Mike" Hawkins, Melinda Lowrance, Ellen Beth Richard, and Terry Lee Neal are the challengers (collectively referred to as

the "Challengers") under Article 11B of Chapter 163 of the North Carolina General Statutes to Plaintiff's candidacy.

## BACKGROUND AND STATEMENT OF FACTS

On February 7, 2022, a group of proposed intervenors—Barbara Lynn Amalfi, Laurel Ashton, and eleven others ("Original Intervenors")—who had filed before the North Carolina State Board of Elections ("NCSBE")[1] a candidacy challenge to Rep. Madison Cawthorn in North Carolina's then-13th Congressional District—moved to intervene as defendants in this matter. ECF No. 28. This Court denied their motion to intervene without prejudice. ECF No. 56.

After court-ordered redistricting, Cawthorn refiled in the revised 11th district. While most of the Original Intervenors do not live in the 11th district where Cawthorn is now running, Ashton does. On March 2, 2022, Ashton and another 11th district voter filed a renewed challenge ("Challenge") that, besides the change in congressional district, is otherwise materially identical to the original challenge. *See* ECF No. 70, at 2. The NCSBE considers that challenge valid. *Id.*[2]

On March 4, 2022, this Court from the bench preliminarily enjoined the NCSBE from taking further action with respect to the Challenge. ECF No. 74. On March 9, Ashton and the other Original Intervenors filed a notice of appeal, ECF No. 75, and, at the Court of Appeals, an emergency motion to stay the injunction. *Cawthorn v. Amalfi*, No. 22-1251 (4th Cir. 2022), ECF No. 3. On March 10, this Court issued a written order permanently enjoining the NCSBE's

---

[1] Defendants are individual members and an employee of the NCSBE, but for simplicity are referred to here as "the NCSBE."

[2] After those initial challenges were filed, identical challenges were filed by three other 11th district voters. The final list of 11th district challengers is: Laurel Ashton, Michael "Mike" Hawkins, Melinda Lowrance, Ellen Beth Richard, and Terry Lee Neal. If this Court perceives any procedural complications from the fact that Ashton is the only 11th district challenger who was also an Original Intervenor, the Court should grant Ashton's motion notwithstanding any complications applicable to the motions of her fellow 11th district challengers.

proceedings. ECF No. 78. On March 14, the NCSBE submitted an amicus brief to the Court of Appeals, stating that (1) it had not decided whether to appeal this Court's order, and (2) if it did, it would not seek expedited review. *Amalfi*, No. 22-1251 (4th Cir.), ECF No. 19.

On March 17, the Court of Appeals denied the application for stay without prejudice. But it noted:

> At the same time, events since the district court's denial of intervention— including filings before this Court—reveal that circumstances may have changed, and the district court suggested it would revisit intervention if the posture of the case changed. We thus believe a limited remand is appropriate in aid of our own jurisdiction to permit appellants to file and the district court to consider a new motion to intervene on an expedited basis. In considering any such motion, the district court should consider which (if any) proposed intervenors still have a challenge remaining before the state board of elections and whether the state court order staying all qualification-related challenges remains in effect. This Court retains jurisdiction over the appeal in all other respects.

*Amalfi*, No. 22-1251 (4th Cir.), ECF No. 33. Ashton and the other 11th district voters who filed challenges against Cawthorn before the NCSBE ("Challengers") now move to intervene.

## ARGUMENT

**I. The Court Should Grant the Motion to Intervene as of Right.**

Rule 24(a)(2) provides for intervention as a matter of right upon a timely motion establishing "(1) an interest in the subject matter of the action; (2) that the protection of this interest would be impaired because of the action; and (3) that the applicant's interest is not adequately represented by existing parties to the litigation." *N.C. State Conf. of NAACP v. Berger*, 999 F.3d 915, 927 (4th Cir.), *cert. granted*, 142 S. Ct. 577 (2021) (quoting *Stuart v. Huff*, 706 F.3d 345, 349 (4th Cir. 2013)). Even after judgment has issued, courts grant intervention "for the limited purpose of prosecuting an appeal." *Newport News Shipbuilding & Drydock Co. v. Peninsula Shipbuilders' Ass'n*, 646 F.2d 117, 123 (4th Cir. 1981).

3

### A. Challengers have a significant protectable interest in Cawthorn's action.

#### 1. *Challengers' role in the North Carolina challenge process.*

Under the Challenge Statute, a voter may file a challenge before the NCSBE alleging "that the candidate does not meet the constitutional . . . qualifications for the office." N.C. Gen. Stat. §§ 163-127.1(3), -127.2(b). The NCSBE appoints a panel to "hear" the challenge, *id.* § 163-127.3(1); the challenger and candidate, as adverse parties before the neutral adjudicative panel, are afforded pre-hearing discovery, including the right to take each other's deposition and request subpoenas for witnesses or documents, *see id.* §§ 163-127.4(a)(2)-(3); the panel conducts a mini-trial, litigated by the challenger against the candidate, for which the challenger "shall be allowed to issue subpoenas for witnesses or documents, or both, including a subpoena of the candidate" and "present evidence at the hearing," *id.* §§ 163-127.4(c)(1)-(2). Challengers may appeal an adverse ruling "as of right" to the full Board, and may appeal an adverse ruling there "as of right . . . directly to the [state] Court of Appeals." *Id.* § 163-127.6(a).

#### 2. *Challengers' protectable interest is not affected by the stay issued by the three-judge panel of the North Carolina Superior Court.*

The stay order stated that it was only in force "until a final resolution of the present litigation." *N.C. League of Conservation Voters v. Hall*, No. 21 CVS 015426, slip op. at 2, https://bit.ly/3ie8qm7 (N.C. Superior Ct. Jan. 11, 2022). Furthermore, the NCSBE informed this Court that "[i]f the matters before the U.S. Supreme Court are resolved with respect to the Congressional map to be used in the upcoming May 17, 2022 primary, and the challenges filed [on March 2] are valid for the Eleventh Congressional District at that time . . . the State Board intends to take up the challenges at that time." ECF No. 70, at 2-3.

After the North Carolina Supreme Court ruling, *Harper v. Hall*, 2022-NCSC-17, 2022 WL 496215 (N.C. 2022), the U.S. Supreme Court denied an emergency application, *Moore v. Harper*,

4

142 S. Ct. 1089 (2022). There are no pending appeals. The litigation is over for the 2022 election—the cycle in which Challengers have a protectable interest. The stay is dissolved by its own terms, and the NCSBE's prior filings before this Court stated it would start hearing the Challenge. The only order blocking the Challenge from proceeding is this Court's injunction.

### B. Challengers' protectable interest has been harmed.

Challengers are "so situated that disposing of the action may as a practical matter impair or impede [their] ability to protect [their] interest." Fed. R. Civ. P. 24(a)(2). A ruling that creates a "practical disadvantage" in a parallel proceeding where the movant has an interest satisfies this prong. *Newport News*, 646 F.2d at 121. Here, denial of intervention (and the concomitant inability to appeal) does not merely create a "practical disadvantage" in the state proceeding; it blocked that proceeding entirely.

Challengers have suffered an injury-in-fact—deprivation of a right, conferred by state law, to litigate a candidacy challenge. The injury is traceable to the injunction, which extinguished Challengers' rights and interests and is redressable by a favorable judicial decision. That the NCSBE may be content to accept the injunction does not prevent Challengers from seeking to defend their rights on appeal. Challengers have standing and may appeal despite NCSBE's refusal to do so. *See Diamond v. Charles*, 476 U.S. 54, 68 (1986) (intervenor with standing has "right to continue a suit in the absence of the party on whose side" it intervened).

As events at the Court of Appeals have revealed, Challengers' interest in this matter cannot be protected as mere amici. Parties with mere amicus status "have no right to seek review by appeal," and if a court blocks implementation of a state law and, as here, the state chooses not to appeal, an amicus has no recourse. *Am. Petroleum Inst. v. Cooper*, No. 5:08-CV-396-FL, 2009 WL 10688053, at *3 (E.D.N.C. Feb. 27, 2009); *see also Newport News*, 646 F.2d at 121–22.

5

### C. The NCSBE does not adequately represent Challengers' interests.

This Court's previous order denied the Original Intervenors' motion to intervene on the premise that the NCBSE would adequately represent their interests. Even if the NCSBE previously did so in this Court, the filings before the Court of Appeals demonstrate starkly that the NCSBE's interests diverge from the Challengers'—and the NCSBE certainly does not adequately represent Challengers' interests now.

An intervenor's burden to show inadequate representation is "minimal"; it only requires that "the representation of his interest 'may be' inadequate." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n. 10 (1972). This is the default rule. An exception applies when the parties share the same "ultimate objective." *Virginia v. Westinghouse*, 542 F.2d 214, 216 (4th Cir. 1976). In such cases, putative intervenors must show "adversity of interest, collusion, or nonfeasance." *Westinghouse*, 542 F.2d at 216.

#### 1. *Challengers and the NCSBE have diverging interests.*

The NCSBE's failure to appeal this Court's order, and its current posture before the Court of Appeals, demonstrate that the NCSBE's ultimate objective in this case is not to *obtain* an order upholding the constitutionality of the challenged statute, but to *avoid* an order declaring the statute unconstitutional. In contrast, Challengers' ultimate objective in this case is to avoid an injunction that will deprive them of their statutory rights—an objective in which the NCSBE has disavowed any interest.

Insofar as the NCSBE's interests included not just avoiding a ruling of unconstitutionality, but also "upholding the constitutionality of the challenged statute," ECF No. 56, at 4, that interest was dissolved by this Court's order. This Court declined to rule on Cawthorn's constitutional challenges to the Challenge Statute, instead relying on a *statutory* interpretation of the 1872

6

Amnesty Act. ECF No. 78, *19. Consequently, this Court's ruling avoided any impact on the NCSBE's interest in "upholding the constitutionality of the challenged statute." This removed the NCSBE's interest in defending its statute. Indeed, from the NCSBE's perspective, *not appealing* the ruling may allow the NCSBE to "uphold[] the constitutionality of the challenged statute" better than appealing it; declining to appeal prevents consideration of Cawthorn's claims that the Challenge Statute is unconstitutional.

The filings before the Court of Appeals conclusively demonstrate that the parties' interests diverge. The NCSBE itself has effectively admitted that, in addition to any interest in upholding the constitutionality of the Challenge Statute, it also serves *other* interests, which diverge substantially from Challengers' interests and render the NCSBE incapable of adequately representing them. The NCSBE's amicus brief in the Court of Appeals (1) asserts that the NCSBE "take[s] no position on Defendant-Intervenor-Appellants' emergency motion or their appeals," *Amalfi*, No. 22-1251, ECF No. 19, at 9), and (2) details, at length, its main interest: implementing its own election timeline, including matters such as time for "State Board staff to input code into the election administrative system, proof the ballots, have ballots printed by vendors, and have those ballots delivered to the county boards," *id.* at 7-8.

Those are entirely appropriate interests for the NCSBE. But they diverge sharply from Challengers' interests, which include not only having the statute upheld, but also of being able to *litigate their challenge before the NCSBE*. In fact, it is foreseeable that, in further briefing, NCSBE may cite these interests to adopt a position directly *adverse* to Challengers, arguing that Challengers' requested relief should be denied because of the NCSBE's practical considerations. Even if the NCSBE *still* retains its interest in upholding the Challenge Statute's constitutionality—a question on which the NCSBE has taken no position—and even if the NCSBE is interested in

7

appealing the injunction (issued on grounds that do not involve the Challenge Statute's constitutionality), the NCSBE's interest would be satisfied by an *eventual* ruling to that effect, after a normal appeal timeline. But Challengers' interest is to *litigate their challenge* and, if successful, *obtain a ruling that Cawthorn is disqualified from the 2022 ballot*. A ruling after the 2022 election is of little value to Challengers.

This sharply distinguishes the present case from *Stuart* and *Berger*. In *Stuart*, where the court announced that a movant seeking to intervene on behalf of a government defendant must provide a "strong showing of inadequacy," the movants "concede[d] that they share[d] the same ultimate objective as the existing defendants." 706 F.3d at 352. Challengers do not.

In *Berger*, the *only* issue was "the validity of [a state law] in state and federal court." 999 F.3d at 931. Although the primary defendants had an additional interest, the court found it did not come at the expense of the interests the two groups shared. *Id.* at 932. That is not true here: the NCSBE has interests in upholding the constitutionality of the Challenge Statute *and* (as evidenced by its amicus brief) in running an election process according to a specified timeframe, while the Challengers have an overlapping but distinct interest: pursuing a challenge against Cawthorn before the NCSBE (and, if needed, in North Carolina courts) based on Section Three of the Fourteenth Amendment.

In *Westinghouse*, the movant sought the same relief and made identical legal arguments. 542 F.2d at 216. Here, that parallelism has been broken. As discussed in more detail below, the delay in deciding whether to appeal shows the divergence. If the NCSBE's hearing panel is not appointed until after ballots are printed, additional questions will be raised about the feasibility of the challenge process *in this case*. *Trbovich* only requires a showing "that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as

8

minimal." 404 U.S. 528, 538 n. 10 (1972). There, it sufficed to show that the NLRB official had dual loyalties to both the "individual union members" and the "public interest," to allow the individual union member *represented by the NLRB* to intervene as a separate party. *Id.* at 538–39. Putative intervenors may have distinct interests even where the parties' objectives are "closely aligned." *Defs. of Wildlife v. N.C. Dep't of Transp.*, 281 F.R.D. 264, 269 (E.D.N.C. 2012). For instance, if settlement could satisfy the state but hurt a private party, that standard is met. *Id.* That is functionally what happened here. This Court's order satisfied both Cawthorn (who currently is free from a candidate challenge based on the Disqualification Clause) and the NCSBE (which no longer has to worry about its statute being declared unconstitutional, nor to expend resources defending it), but stymied Challengers' interests entirely.

### 2. *Even under the higher standard of Stuart and Berger, intervention is warranted.*

If the movant and the party have the same "ultimate objective," representation is presumed adequate, absent a showing of "adversity of interest, collusion, or nonfeasance." *Westinghouse*, 542 F.2d at 216. The unique timelines in this matter create "adversity of interest." Even stipulating that, in the earlier phase of this proceeding, the Challengers and the NCSBE made substantially similar arguments, *see* ECF No. 56, *5, at this point Challengers are making a vigorous argument on appeal—and the NCSBE is making none at all. And while the *Westinghouse* court noted that the parties made identical arguments, it did so to determine that the two parties had the same "ultimate objective" and therefore the presumption of adequate representation applied. 542 F.2d at 216. Indeed, the movant admitted it "would be adequately represented by [the plaintiff]." *Id*. Challengers here have made no such admission.

The tight timeline created by the impending election creates an "adversity of interest" not found in other cases. Here, the NCSBE's interest is to avoid a declaration that the Challenge Statute

9

is unconstitutional. The Challenge Statute was left unaffected by this Court's ruling, which means that "no appeal" fulfills that interest; if the NCSBE does decide at some point to appeal this Court's ruling based on the 1872 Amnesty Act, it is of little concern to the NCSBE whether that ruling is reversed over the course of many months (or years) of protracted litigation or in in the next week. In contrast, Challengers' interest is to bring *this* candidate challenge, in *this* election cycle. The differences in "strategy" can mean the difference between vindicating or obstructing—even unintentionally—the movant's protected interests. The issue is not that Challengers have a "stronger" interest in the litigation or think the NCSBE is not committed to defending the law. Instead, as its amicus brief demonstrates, the NCSBE is agnostic on this litigation's timeline, whereas the timeline poses existential risks to Challengers' challenge.

It is true that, like *Stuart*, part of the adversity centers on appellate "strategy." But unlike *Stuart*, the decision of when to appeal does not reflect differences in *strategy*, but differences in *interests*. The NCSBE can afford to wait 30 days to decide whether to appeal the 1872 Amnesty Act issue. Meanwhile, the NCSBE has no interest in a stay of the injunction, because the injunction is not adverse to its interest in upholding the Challenge Statute's constitutionality.

But even if the NCSBE later appeals and prevails, a panel would be designated after ballots have been printed. To be sure, the NCSBE has statutory authority to render a ruling on disqualification after ballots have been printed (or even after the primary). *Amalfi*, No. 22-1251 (4th Cir.), ECF No. 19 at 9. Even if the panel proceedings (or subsequent appeals) have not concluded before ballots are printed, the NCSBE retains jurisdiction over a challenge, and state law provides mechanisms for addressing candidate disqualification at later stages. *See, e.g.,* N.C. Gen. Stat. § 163-114(a) (specifying procedure for replacement of congressional candidate disqualified after primary). But as a practical matter, candidacy challenges later in the process raise

10

complications. *See*, *e.g.*, *In re Bowen*, Record 106–121 (NCSBE June 6, 2018), http://bit.ly/SBEBowen. Thus, while the NCSBE's points do not bar relief, they do confirm how the NCSBE's interests diverge from Challengers'. The Challengers' interest here is on a fast-moving timeline that renders what might be mere "strategic decisions" in other cases fundamental issues in this one.

### III. Alternatively, the Court Should Grant Permissive Intervention Because Challengers' Defenses and the Claims and Defenses of Cawthorn and the NCSBE Share Common Questions of Law and Fact.

Alternatively, this Court should grant permissive intervention under Rule 24(b). That is appropriate because Challengers' defenses share with the "main action" common questions of law and fact. *See* Fed. R. Civ. P. 24(b)(1)(B). Nor would intervention "unduly delay or prejudice the adjudication of the original parties' rights" under Rule 24(b)(3). This matter has *already* been finally adjudicated before this Court. Intervention is the *only* question presently pending here, and it is solely to determine the extent to which Challengers may maintain further proceedings in the Court of Appeals.

### IV. This Court Should Dispense with the Requirement of Filing a Pleading with the Motion to Intervene.

Challengers' motion does not contain a formal answer as per Rule 24(c). But doing so—especially at this stage, when this Court has issued a final judgment on the merits, and where the Court of Appeals has remanded the case to this Court for the sole purpose of considering a motion to intervene given the case's present posture and circumstances—would be a pointless formality. All the grounds for Challengers' intervention were apparent from Cawthorn's own papers, which repeatedly refer to Challengers' claims. "If the intervenor is content to stand on the pleading an existing party has filed, it is difficult to see what is accomplished by adding to the papers in the

case a new pleading that is identical in its allegations with one that is already on file." 7C Charles Alan Wright & Arthur R. Miller, Fed. Practice & Proc. § 1914 (3d ed. 2021).

## CONCLUSION

This Court should grant Challengers' motion to intervene.

This the 17th day of March, 2022.

Respectfully submitted,

*/s/ Pressly M. Millen*
Pressly M. Millen (State Bar #16178)
Raymond M. Bennett (State Bar # 36341)
Scott D. Anderson (State Bar # 49044)
Hayes Jernigan Finley (State Bar # 47834)
Womble Bond Dickinson (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
Office: 919.755.2135
Fax: 919.755.6067
Email: Press.Millen@wbd-us.com
      Ray.Bennett@wbd-us.com
      Scott.D.Anderson@wbd-us.com
      Hayes.Finley@wbd-us.com

John R. Wallace (State Bar #7374)
Lauren T. Noyes (State Bar #28130)
Post Office Box 12065
Raleigh, NC 27605
Office: 919.782.9322
Fax: 919.782.8133
Email: jrwallace@wallacenordan.com
ltnoyes@wallacenordan.com

Robert F. Orr (State Bar #6798)
3434 Edwards Mill Road, Suite 112-372
Raleigh, NC 27612
Office: 919.608.5335
Email: orr@rforrlaw.com

Ronald Fein*
John C. Bonifaz*
Ben Clements*
Courtney Hostetler*

12

Benjamin Horton*
Free Speech For People
1320 Centre St. #405
Newton, MA 02459
Office: 617.244.0234
Email: rfein@freespeechforpeople.org

*Attorneys for Defendant-Intervenors Laurel Ashton, Michael "Mike" Hawkins, Melinda Lowrance, Ellen Beth Richard, and Terry Lee Neal*

*Of Counsel*

James G. Exum, Jr. (State Bar #1392)
6 Gleneagle Ct.
Greensboro, NC 27408
Office: 336.554.1140
Email: jimxzoom@gmail.com

*Special appearances pursuant to L.R. 83.1