# UNITED STATES DISTRICT COURT
# OF THE EASTERN DISTRICT OF NORTH CAROLINA
# WESTERN DIVISION

| | |
|---|---|
| **MADISON CAWTHORN**, an individual,<br><br>*Plaintiff*,<br><br>v.<br><br>**MR. DAMON CIRCOSTA**, in his official capacity as Chair of the North Carolina State Board of Elections, *et al.*<br><br>*Defendants*. | Civ. No. 5:22-cv-00050-M |

## Plaintiff's Response in Opposition to Renewed Motion to Intervene

Proposed-intervenors' ("**March Challengers**") renewed[1] motion to intervene should be denied. This litigation has always been about the lawfulness of the North Carolina's Congressional candidate challenge law, N.C.G.S. § 163-127 *et seq*. ("**Challenge Statute**"), and the lawfulness of the applicability of Section Three of the Fourteenth Amendment ("**§ 3**") to Plaintiff Madison Cawthorn. It has never been about the *merits* of the January or March Challengers' candidate challenges. ("**§ 3 Challenges**").

The North Carolina State Board of Elections ("**NCSBE**") has consistently asserted its interest in upholding the Challenge Statute under both constitutional and federal law and in the

---

[1]Proposed Intervenor claim that this is a "renewed" motion to intervene. However, since only one of the proposed intervenors in the "renewed" motion was a proposed intervenor in the original motion to intervene ("**January Challengers**"), DE 91 at 2, this properly should be called a "new" intervention.

1

lawfulness of a § 3 challenge. To that end, the NCSBE vigorously opposed Cawthorn's motion for an injunction, both in briefing and in a hearing before this Court. Thus, NCSBE and the March Challengers do not have divergent interests *in this case* on whether the Challenge Statute and a § 3 challenge is lawful or not. Both the NCSBE and the March Challengers have the same interest—they both asserted before this Court[2] that the Challenge Statute and the § 3 Challenge are lawful under both the U.S. Constitution and federal law. After all, if a § 3 challenge under the Challenge Statute is unlawful under federal law, as this Court has held, March Challengers have *no* interest at stake in the merits of their § 3 Challenge, as no one has the right to bring a candidate challenge that is itself unlawful.

January and March Challengers have characterized their interest as an interest in litigating the merits of their § 3 Challenges. However, as explained below, there are actually numerous obstacles to the March Challengers "litigating the merits of their § 3 Challenges": whether a § 3 Challenge is even permitted under the U.S. Constitution and federal law and whether the Challenge Statute is a constitutional way to do it. So here, the interests of both the NCSBE and the March Challengers are the same, both want to permit the NCSBE to hear a § 3 challenge and for the March Challengers to "litigate" it. DE 102 at 1-2 (NCSBE asserting interest in "discharging its duties under North Carolina law to ensure candidates satisfy the legal qualifications for office").

But even if one accepts that the NCSBE and the March Challengers interests are potentially different, the March Challengers are actually claiming a future hypothetical and

---

[2] The January Challengers argued the Challenge Statute and their § 3 Challenges were constitutional and lawful in their Proposed Opposition to Plaintiff's Motion for Preliminary Injunction. DE 27-1.

speculative divergence of their respective interests, if, at sometime in the future, the NCSBE determines that the March Challengers should not be permitted to litigate their challenges. To the extent that March Challengers' interest in litigating the merits of their § 3 Challenge eventually diverge from the NCSBE's (and the March Challengers') interest in upholding the lawfulness of the Challenge Statute and of a § 3 challenge, that possible future divergence has always existed and would arise in a situation that is not before this Court, since only the lawfulness of the Challenge Statute and a § 3 challenge is. And this Court did not consider that possible future divergence a reason to grant intervention in the first place..

The NCSBE may still appeal this Court's injunction. If it does, and the injunction is reversed, March Challengers may then proceed with their § 3 Challenges against Cawthorn under the Challenge Statute. North Carolina law provides for a process to replace a candidate who is found to be disqualified after the primary election but before the general election. N.C.G.S. § 163-114.

March Challengers "renew" their motion to intervene for the sole purpose of appealing *now*. Their impatience ignores two key factors: (1) March Challengers do not have a protectable interest here; and (2) this Court's prior reasoning regarding intervention still applies to their current procedural posture. That is, the NCSBE and the March Challengers share the same interest in defending the lawfulness of the Challenge Statute and of a § 3 challenge, and the NCSBE still adequately represents that interest—so nothing in the current procedural posture of the March Challengers warrants an intervention as of right. Likewise, since the March Challengers cannot show that their intervention will more easily facilitate this action, and in fact will further complicate it, they should not be given permission to intervene.

**Background and Statement of Facts[3]**

Cawthorn currently serves as a Member of the U.S. House of Representatives for North Carolina's 11th Congressional District. DE 1 at ¶ 9. In December of 2021, Cawthorn filed his candidacy for the upcoming midterm election, in North Carolina's 13th congressional district. *Id.* January Challengers from that district filed a § 3 Challenge against Cawthorn. Cawthorn then sought filed suit in this Court to enjoin the NCSBE from enforcing any § 3 challenges against him under the Challenge Statute, based upon several constitutional claims and one claim under federal law. DE 1 at 12-18.

The January Challengers also filed a motion to intervene. DE 27. This Court denied the intervention as a matter of right, because they failed to overcome the heightened presumption of adequate representation borne from the fact that "[u]ndoubtedly, the movants and Defendants share the same ultimate objective in this case: to obtain a court order rejecting Plaintiff's claims and upholding the constitutionality[4] of the challenged statute." DE 56 at 4. Likewise, this Court denied permissive intervention, because "[t]he movants' response brief adds little to nothing to the Court's consideration . . . [and] not only is unnecessary, but also would delay this matter since the briefing on the motion by the parties is now complete." *Id.* at 6.

While Cawthorn's action was pending in this Court, and after litigation in North Carolina

---

[3] Pursuant to this Court's Order, DE 91, Cawthorn's position is that the March Challengers' statements of fact related to whether the March Challengers' still have a challenge remaining before the NCSBE and whether the stay on qualifications-related challenges is still in effect for the 2022 election cycle are accurate.

[4] Since this Court did not reach the merits of Cawthorn's constitutional claims, the NCSBE and Challengers would also share the same ultimate objective in this case in regards to federal law that formed the basis of the injunction.

4

state courts moved the 13th Congressional District to another region of the state, Cawthorn withdrew his candidacy for that district and re-filed in the new 11th Congressional District. DE 70. Most of the January Challengers did not live in the newly drawn 11th District and could not bring a § 3 challenge under the Challenge Statute. Because the NCSBE stated the January Challenges were no longer valid, this Court continued the previously scheduled hearing on the merits. DE 69. However, January Challenger Laurel Ashton lives in the newly redrawn 11th District and she, along with other voters, filed a § 3 challenge against Cawthorn. ("**March Challengers**"). After the NCSBE properly noticed this Court that the March Challengers had filed a § 3 challenge against Cawthorn in the redrawn 11th District, this Court scheduled a hearing on Cawthorn's pending injunction motion. DE 71. The March Challengers did not move this Court for intervention nor did they move this Court for reconsideration of its previous decision regarding intervention at that time.

After briefing and a hearing, this Court issued an order permanently enjoining the NCSBE from processing any § 3 challenges. DE 78 at 25-26. In so ruling, "[t]h[is] court explicitly avoided ruling on whether the Board may determine the qualifications of political candidates under its authority granted by state statute, the state constitution, and Article 1, Section 4, Clause 1 of the U.S. Constitution as to the 'time, place, and manner of holding elections,'" *id.* at 26, as well as constitutional challenges to the Challenge Statute.

March Challengers then filed a notice of appeal, appealing the (1) Order Denying the Motion to Intervene (2) the Order granting Plaintiff's Motion for Preliminary Injunction and (3) the Order granting Plaintiff's motions for preliminary and permanent injunction. DE 80 at 2. March Challengers filed an emergency motion for stay of this Court's injunction pending appeal

5

with the Fourth Circuit. *See* 92-7. The Fourth Circuit denied the stay but ordered a limited remand to this Court "to consider a new motion to intervene on an expedited basis." DE 92-9 at 2. The Fourth Circuit ordered this Court to consider "which (if any) proposed intervenors still have a challenge remaining before the state board of elections and whether the state court order staying all qualifications-related challenges remains in effect." *Id.* at 3.

March Challengers then filed their Expedited Renewed Motion to Intervene. DE 87.

## Argument

### I. March Challengers should be denied intervention as of right.

Federal Rule of Civil Procedure 24 provides two paths for intervention, one mandatory and one discretionary. Under Rule 24(a)(2), intervention must be permitted if a proposed intervenor can prove in a timely motion "(1) an interest in the subject matter of the action; (2) that the protection of this interest would be impaired because of this action; and (3) that the applicant's interest is not adequately represented by existing parties to the litigation." *North Carolina State Conference of NAACP v. Berger*, 999 F.3d 915, 927 (4th Cir. 2021).

Not only can March Challengers not overcome the heightened presumption of adequate representation, but allowing intervention would prejudice not just all parties, but all the voters of North Carolina, they have no protectable property interest in an appeal, and the March Challengers' interests are adequately represented by the NCSBE.

**A.     March Challengers' intervention would prejudice the parties.**

While March Challengers renewed motion to intervene can be considered timely, their intervention would prejudice the parties. "The most important consideration is whether [intervention] would prejudice the parties." *Spring Const. Co., Inc. v. Harris*, 614 F.2d 374, 377

6

(4th Cir. 1980).

While NCSBE is considering whether to file an appeal of this Court's order, DE 92-8 at 3, they have certain statutory (state and federal) deadlines to meet for distributing absentee ballots. *Id.* at 7-8. North Carolina state law sets the deadline on March 28, 2022, to start distribution of absentee ballots to registered voters who applied for them. N.C.G.S. § 163-227.10(a) (providing that absentee ballots are to be mailed 50 days prior to the primary election). The NCSBE notified this Court that it began mailing out absentee ballots to voters on March 28, 2022. DE 102 at 1.

As the NCSBE noted, the "candidate challenge process requires a number of administrative steps that must be completed." DE 92-8 at 8. These steps include appointing a panel, a hearing before that panel (which can include discovery, depositions, subpoenas, and potential motion practice), the panel's preparation of a written decision, a likely appeal to the NCSBE, the NCSBE's written decision, and further appeals as of right to the North Carolina Court of Appeals. *Id.* (citing N.C.G.S. § 163-127.1, *et seq.*).

Avoiding prejudice to the parties at this point would require a time machine. The NCSBE acknowledges that absentee ballots have been printed, and it has begun mailing them to voters as of March 28, 2022. DE 102 at 1. This motion, the subsequent appeal, and the challenge proceedings, including appeals, would need to have been finished before March 28, 2022 in order to avoid prejudice to the parties. Such prejudice-avoiding adjudication is literally impossible because that would require this Court to decide the intervention question before it in March Challengers' favor, and then require the Fourth Circuit to be fully briefed and hear the appellate arguments pertaining to this Court's injunction—all after absentee ballots have begun to be

7

mailed with Cawthorn's name on them.

Notwithstanding the absentee ballot issue, even assuming the Fourth Circuit reverses this Court's injunction, the Challenge panel hearing (and all related discovery), the NCSBE appellate process, and the North Carolina Court appellate process allowed under the Challenge Statute would have to be completed before May 17, 2022 in order to be completed before the primary election day. Otherwise, North Carolina voters could cast votes for Cawthorn, only to have Cawthorn potentially disqualified after the election and a different candidate appointed to run under N.C.G.S. § 163-114.

The only way that the March Challengers' § 3 Challenge could have been finished before irreparable prejudice to these parties and voters occurred would have been if the entire primary election was postponed until after the March Challengers' § 3 Challenge were fully adjudicated. This did not happen as absentee ballots have begun to be mailed and the primary election is still proceeding as scheduled on May 17, 2022.

Prejudice might not be a strong enough word to describe the impact on Cawthorn and the NCSBE, and to the voters of North Carolina—other words that sprint to mind are chaos, confusion, and extreme disorder. Under *Spring Const.*, March Challengers' motion to intervene should be denied on the basis of this extreme prejudice.

**B.     March Challengers have no protectable property interest in an appeal.**

A right or entitlement created by a state statute can give rise to a cognizable "property" interest protected under the Fourteenth Amendment. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). But such a property interest requires the party seeking to protect such an interest to have more than an abstract need or desire for it, and he must have more than a

unilateral expectation of it. *Id.* "He must, instead, have a legitimate claim of entitlement to it." *Id.*

The March Challengers argue that they have been deprived "of a right, conferred by state law, to litigate a candidacy challenge." DE 88 at 5. First, this Court has specifically held that only § 3 challenges are enjoined, so March Challengers would still have the right to litigate any non-enjoined challenge against Cawthorn. Second, March Challengers have no right to an *unlawful* challenge, and this Court has held a § 3 challenge is unlawful. For instance, no court would recognize a disqualification challenge based upon race or sex—that would clearly be unlawful and a challenger could not claim a property interest in such a challenge. Third, if the March Challengers have a federally recognized interest in having their § 3 Challenges litigated at the state level, and they assert intervention is the only way that right could have been protected, they waived that right when they did not move this Court for reconsideration or file a new motion to intervene when the March Challengers filed their § 3 Challenges.

The March Challengers also claim their interest is to obtain a ruling that Cawthorn is disqualified from the 2022 ballot, if their § 3 Challenges are successful. DE 88 at 8. That stated interest would necessitate a ruling on the validity of the March Challengers' § 3 Challenges. This Court has correctly found that the merits of the § 3 Challenges is not an issue before this Court. DE 56 at 4.

The March Challengers also imply that they have a right to enforce the constitutional qualifications for candidates for Congress. As Cawthorn argued to this Court, it is the exclusive role of Congress to make an independent, final judgment on the qualifications of its Members. U.S. Const. Art. 1, § 5. Although this Court did not reach this constitutional question, its injunction does not prevent March Challengers from advocating for Cawthorn's disqualification,

9

if elected, before Congress itself.

**C.     March Challengers are adequately represented by NCSBE.**

This Court previously found that the January Challengers' interests were adequately represented by NCSBE, finding that "a heightened presumption of adequacy applies when would-be intervenors share the same ultimate objectives as a government defendant." DE 56 at 3-4 (citing *N. Carolina State Conf. of NAACP v. Berger,* 999 F.3d 915, 932 (4th Cir. 2021). In denying the original motion, this Court found that "the [January Challengers] fail[ed] to overcome the strong presumption of adequate representation by Defendants." DE 56 at 4. March Challengers are still unable to overcome this heightened presumption.

In order to overcome the heightened presumption of adequacy, a proposed-intervenor must "mount a strong showing of inadequacy." *Berger*, 999 F.3d at 932. (citations omitted). To rebut the presumption of adequate representation, the March Challengers must make a strong showing of "adverse interests, collusion, or nonfeasance." *Stuart v. Huff*, 706 F.3d 345, 350 (4th Cir. 2013).

First, March Challengers argue that there is no heightened presumption since they and NCSBE have "diverging interests." DE 88 at 6. They argue that NCSBE no longer has any "interest in defending its statute," because it has other, more important interests, such as statutory deadlines for mailing absentee ballots. *Id.* at 7. March Challengers' argument, however, contrasts directly with the NCSBE's own words, which states that it "is reviewing the written order to determine whether it will file an appeal." DE 92-8 at 3. The NCSBE confirmed again to this Court that it is "still considering" whether to appeal. DE 102 at 1.

Regardless of that factual dispute, March Challengers' claimed interest still "conflate[s]

10

their challenge to Plaintiff's qualifications before the State Board of Elections with this litigation." DE 56 at 4. March Challengers contend that their interest includes not only having the statute upheld, but also of being able to *"litigate their challenge* and, if successful, *obtain a ruling that Cawthorn is disqualified from the 2022 ballot*." *Id.* at 8. That stated interest would necessitate a ruling by this Court on the validity of the March Challengers challenge to Cawthorn's candidacy.

However, the only interest at stake in *this* litigation is whether the Challenge Statute and a § 3 challenge is constitutional or lawful. "[T]he [March Challengers] here–like the would-be intervenors in *Stuart* and *Berger*–can only hope to mount their own defense of this statute." DE 56 at 4. NCSBE and March Challengers still have the same *ultimate* objective in *this* litigation, upholding the validity of the Challenge Statute and the lawfulness of a § 3 challenge.

Similar to March Challengers' interest in litigating their challenge before the NCSBE, NCSBE's interest in a timely election is ancillary to this litigation. While March Challengers argue that this interest now exists for the first time, it has existed throughout the entirety of this litigation and has had no bearing on NCSBE's ultimate objective, which is to uphold the validity of the Challenge Statute and of a § 3 challenges.

March Challengers next argue that "[t]he unique timeliness in this matter creates adversity of interest" and that "[March Challengers] are making a vigorous argument on appeal—and the NCSBE is making none at all." DE 88 at 9. However, NCSBE still has until April 11th to file an appeal, which it has not foreclosed. DE 92-8 at 3. March Challengers even acknowledge that NCSBE can still appeal. *Id.* at 10. But they argue they cannot wait and see if NCSBE appeals—in their minds, any "delay" in an appeal by the actual party to the case creates

11

an adversity of interests sufficient to overcome the heightened presumption of adequacy. This argument fails for several reasons.

First, a heightened presumption of adequate representation still exists. If the NCSBE were to file an appeal today, this Court has acknowledged that it, not the March Challengers, are the best party to litigate the appeal. DE 56 at 4-5. "[T]he government is simply the most natural party to shoulder the responsibility of defending the fruits of the democratic process." *Stuart* 706 F.3d at 351. In *Berger*, a renewed motion to intervene focused, in particular, on the Board not moving to stay the preliminary injunction once entered. 999 F.3d at 935. This, they argued, amounted to nonfeasance sufficient to rebut the presumption of adequacy. *Id.* The Fourth Circuit held it wasn't nonfeasance, but rather it the "sort of disagreement over how to approach the conduct of the litigation . . . insufficient to rebut the presumption of adequacy, as evidence of either nonfeasance or adversity of interests." *Id.*

March Challengers' whole argument for adversity of interests is that NCSBE has not *yet* filled an appeal. That is not enough to overcome the presumption of adequacy or to find sufficient divergent interests to meet the intervention standard. There could be a myriad of reasons why NCSBE has not yet filled an appeal. March Challengers clearly want an appeal filed *now*, but just as in *Berger*, where a disagreement about which motion to file did not create an adversity of interests, disagreement about when to file an appeal does not create an adversity of interest either.

Second, March Challengers state that the NCSBE can wait till after the deadline for delivery of primary ballots to appeal, whereas they themselves cannot because they are "on a fast-moving timeline." DE 88 at 11. March Challengers "fast-moving timeline" is self-

12

imposed—such self-imposition does not show an adversity of interest between the NCSBE and the March Challengers, but rather a difference of opinion in how fast the proceedings should move.

## II. March Challengers should be denied permissive intervention

Under Federal Rule of Civil Procedure 24(b)(1)(B), district courts may permit intervention where the proposed intervenors share common questions of law or fact with the main action. However, courts "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3); *see also Berger*, 999 F.3d at 939. When the existing defendant and proposed-intervenor seek the same ultimate objective, courts can conclude that intervention would introduce unnecessary delays and complications "without a corresponding benefit to existing litigants, the court, or the process." *Stuart*, 706 F.3d at 355 (affirming a denial of permissive intervention based on these finding).

Not only would intervention prejudice the NCSBE, Cawthorn, and the voters of North Carolina (see Part I.A.), it would also unnecessarily delay and complicate any appeal "without a corresponding benefit to existing litigants, the court, or the process." *Stuart*, 706 F.3d at 355. If NCSBE were to appeal this Court's injunction (which it still is considering), it and the March Challengers would seek the same ultimate objective, a ruling that NCSBE can hear § 3 challenges. But the March Challengers do not add a corresponding benefit—this Court held that January Challengers' "response brief add[ed] little to nothing to the court's consideration of the Plaintiff's request for preliminary injunctive relief." DE 56 at 6. It is hard to see how the March Challengers' brief would add benefit to the Fourth Circuit when such a benefit was examined and specifically rejected by this Court.

13

For these reasons, the Court should deny March Challengers motion to intervene.

## Conclusion

Because absentee ballots have begun to be mailed, and the primary election has not been postponed, intervention would prejudice all parties and the voters of North Carolina. The March Challengers are unable to meet their burden of a substantial showing of inadequate representation, and they have no protectable property interest in an appeal. Thus, the March Challengers are not entitled to intervention as of right. Since March Challengers would unnecessarily complicate, delay, and prejudice the adjudication, while not adding any corresponding benefit, they should not be permitted to intervene.

For all the foregoing reasons, this Court should deny March Challengers motion to intervene.

Dated: March 28, 2022

Respectfully Submitted,

/s/ Josh Howard
Gammon, Howard & Zeszotarski, PLLC
The Water Tower Building
115 ½ West Morgan Street
Raleigh, NC 27601
jhoward@ghz-law.com
Phone: (919) 521-5878
Fax: (919) 882-1898
State Bar No. 26902
*Local Civil Rule 83.1(d) Counsel for Plaintiff*

/s/ James Bopp, Jr.
James Bopp, Jr., Ind. Bar No. 2838-84*
Melena S. Siebert, Ind. Bar No. 35061-15*
THE BOPP LAW FIRM
1 South 6th Street
Terre Haute, Indiana 47807
Telephone: (812) 232-2434
Facsimile: (812) 235-3685
jboppjr@aol.com
msiebert@bopplaw.com
*Attorneys for Plaintiff*
*Special Appearance Filed

**Certificate of Compliance with Type-Volume Limit**

I hereby certify that this document complies with the word limit of Local Civil Rule (f)(2)(3) because, excluding the parts of the document exempted by Local Civil RUle (f)(1), this document contains 3,866 words and does not exceed 30 pages. All words counted were generated by the word processing software used.

March 28, 2022                                             /s/ James Bopp, Jr.
                                                                        James Bopp, Jr.
                                                                        *Lead Counsel for Plaintiff*

15

Case 5:22-cv-00050-M   Document 103   Filed 03/28/22   Page 15 of 15

**Certificate of Compliance with Type-Volume Limit**

I hereby certify that this document complies with the word limit of Local Civil Rule (f)(2)(3) because, excluding the parts of the document exempted by Local Civil RUle (f)(1), this document contains 3,866 words and does not exceed 30 pages. All words counted were generated by the word processing software used.

March 28, 2022                                             /s/ James Bopp, Jr.
                                                                        James Bopp, Jr.
                                                                        *Lead Counsel for Plaintiff*